**Joe Ingram, Appellee, v. Hammar Brothers White Lead Company, Appellant.**

Opinion filed December 26, 1933.

KEVIN KANE and FRANK A. WESLEY, for appellant.

FRANK M. SUMMERS, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

Joe Ingram, appellee, in his suit against Hammar Brothers White Lead Company, a corporation, appellant, alleged in his declaration that he had, prior to June 1, 1925, been in the employ of appellant, and that while so engaged he became afflicted with lead poisoning, which malady arose out of and in the course of such employment; in consequence of which he was entitled to seek remuneration under the Workmen's Compensation Act, Cahill's St. ch. 48, ¶ 201 *et seq.*; that he entered into an agreement with appellant, whereby the latter was to pay him the sum of $8 weekly during the remainder of his life, and he was to relinquish any rights which he might have, under the statutes, to compensation; that appellant made such payments until June 30, 1931, after which it refused to further carry out the agreement or make pay-

ments in accordance with its terms; and that the accrued and unpaid amount due thereunder was $720.

To the declaration, as finally amended, there was pleaded the general issue. There was a trial by jury, and a verdict and judgment for $720, to reverse which this appeal is prosecuted.

Appellant contends that the declaration is not sufficient to sustain the judgment. It, however, appears that such ground is not named in the assignment of errors as a reason for reversal. It is the settled rule that a contention not covered by any assignment of error, is not open for review upon appeal. *Anglo-Wyoming Oil Fields v. Miller,* 216 Ill. 272; *Thayer v. Peck,* 93 Ill. 357. The alleged error, not being among those enumerated in the assignment, cannot be considered by this court.

It is next urged that appellee has failed to prove that he was disabled by lead poisoning, or that the disease arose out of and in the course of his employment.

The proof shows that he worked for appellant from 1904 until June, 1925, when he was obliged to discontinue because of illness. He testified that he handled white lead; that is, kept the wet lead and dry lead apart, and kept the trash out of it; that during his employment he became leaded, felt cramps in his stomach, sickness and vomited; that Dr. Brennan, the regular company doctor of appellant, treated him; that during the winter of 1925 he became ill; that it went on until the summer, after which he did not go back to work; that Mr. Stegman, superintendent of appellant, sent for him and stated that the company would pay him $8 per week the rest of his life; that he had intended to sue appellant for his disability, but accepted its offer and forbore to bring any legal proceedings; that it paid him each week until June 30, 1931.

Dr. Brennan, called by appellee, testified that on various dates between 1921 and 1924, he treated appellee for lead poisoning, and from January 26 to February 27, 1925, he again treated him for the same disorder; that he did so upon subjective symptoms. He, however, stated that among the symptoms of lead poisoning were those appellee testified he was afflicted with during such time. The doctor, later called by appellant, stated that in September, 1925, several months after appellee had ceased work, and the agreement in question had been entered into, he examined the latter at the hospital, by blood test and otherwise, and found no indication of lead poisoning, but did discover syphilitic infection.

It seems strange that the doctor should have treated appellee at intervals over a long period of time for lead poisoning, if he were not satisfied and convinced that he was so afflicted. He further testified that he communicated the fact of discovering the syphilitic condition to the officials of appellant; yet they continued to make the payments for nearly six years, after being apprised of such disorder.

That the appellant, paying to appellee a weekly pension because of lead poisoning, occasioned by his employment in their service, should for several years have continued to make such payments, after being advised to the effect that he was suffering from a venereal disorder, instead of illness as a result of being leaded, seems improbable. We think the jury were warranted, from the proof, in finding that appellee had lead poisoning, growing out of and in the course of his employment, as a servant of appellant, and that, had he presented a claim before the industrial commission for same, he would have been entitled to an award therefor; hence there was a valid and sufficient consideration for the agreement. *Makarewicz v. Hoyt Metal Co.*, 262 Ill. App. 327.

Appellant complains of certain rulings of the court in permitting appellee to testify to his conclusions as to being poisoned by lead. It appears that the latter testified, without objection on the part of appellant, in response to the question: "Ques.: "During your employment with the Hammar Brothers White Lead Company, did you ever become leaded?" Ans.: "Yes." Ques.: "Just state to the court and jury how you felt." Ans.: "I was cramping in my stomach, sickness and I vomited." Ques.: "Were you treated by a doctor?" Ans.: "Yes." Ques.: "What doctor?" Ans.: "Dr. Brennan, the company doctor." Ques.: "Calling your attention to the year 1925, do you remember being sick in that year?" Ans.: "Yes." Ques.: "How did you feel at that time?" Ans.: "The same thing, the effect of lead."

To which last question and answer, appellant objected as being a conclusion. The court, however, ruled that it might stand. We think the answer, or at least the latter part of it, should have been stricken as being the conclusion of the witness. In the state of the record, however, the ruling was harmless. As before observed, appellee had just previously testified that he had been leaded while in the employ of appellant, and the latter did not object to the question or answer; nor did it move to strike the answer. Where improper evidence is taken without objection, it is to be considered and given its natural probative effect the same as if, in law, it was admissible. *Ascher Bros. Amusement Enterprises v. Industrial Commission,* 311 Ill. 258, 261. Having failed to object when the question was asked and answer made, and not having moved to strike the answer, appellant cannot now urge an objection which might have been obviated, if made at the trial. *Bartlow v. Chicago, B. & Q. R. Co.,* 243 Ill. 332, 334.

The latter answer, to which objection was made, was but a reiteration of. the answer to a former question, to which appellant did not object; hence its only effect was to again bring out what was already before the jury without objection. Later, appellee was asked: Ques.: "State how you felt." Ans.: "I had cramps in my stomach; I had vomiting; it makes you sick any time any one is poisoned." To which appellant objected. It does not appear, however, that the court ruled upon the objection; while still later, appellee, in response to the question: "Try and tell us how you vomited," answered: "I was sick from being leaded; I had severe pains." Appellant did not object to the answer, nor move to strike same.

A party who fails to object to the admission of testimony waives objections to the subsequent admission of the same or similar evidence. *New Amsterdam Casualty Co. v. Saloman,* 165 Ill. App. 264; *Andrews v. Western Asphalt Paving Corp.,* 193 Iowa 1047, 188 N. W. 900; *Boston Woven Hose & Rubber Co. v. Kendall,* 178 Mass. 232, 59 N. E. 657. Appellant was not harmed by the ruling.

Lastly, it is contended that there was no proof of authority on the part of Stegman to bind appellant, by the agreement in question. It is undisputed that he was superintendent of the company; also, it is not denied that appellant, for nearly six years, made its weekly payments thereunder. Hence, regardless of whether or not he did have such authority, appellant, by its conduct and continued payments, ratified the contract which its superintendent entered into with appellee, and is bound by the terms thereof. *St. Louis & Memphis Packet Co. v. Parker,* 59 Ill. 23.

The jury made its award of $720, which, at $8 per week, would represent 90 weeks. The payments ceased June 30, 1931. Suit was started March 2, 1933, 87

weeks later. The verdict, therefore, could not exceed $696.

If appellee will, within 15 days, file a remittitur in the office of the clerk of this court, in the sum of $24, judgment will be affirmed for $696; otherwise reversed and remanded.

*Affirmed upon remittitur; otherwise reversed and remanded.*