Raymond Alan Stevens, Plaintiff-Appellant, v. Edward J. Fanning, et al., and "Unknown Others," Defendants-Appellees.

Gen. No. 64–114.

Second District.

May 11, 1965.

Norville, Walsh & Case, of Chicago (Robert N. Caffarelli, of counsel), for appellant.

O'Brien, Burnell, Puckett & Barnett, of Aurora (W. C. O'Brien, Wilson D. Burnell, of counsel), for Edward J. Fanning and Rita Fanning, certain-defendants-appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

The plaintiff, Raymond Alan Stevens, brought this suit claiming that the sum of $14,535.65 remained due him from the defendant, Edward J. Fanning, under the terms of a written contract, pursuant to which he performed architectural services for Fanning. The case was tried before the court without a jury, and the court entered judgment for the plaintiff in the sum of $2,500. The plaintiff appealed from the judgment.

Fanning, a Chevrolet dealer in Aurora, contacted Stevens in early October, 1962, for the purpose of having Stevens design a building for his dealership. At this point he had only three basic requirements for the building: first, that it contain at least 40,000 square feet; second, that it not cost over $250,000; and third, that the construction proceed with dispatch as his present lease was expiring. Fanning presented Stevens with some preliminary drawings, which he had received from an engineering company

287

specializing in the construction of prefabricated type steel buildings, in order to give Stevens a general idea of the floor plan desired.

On two occasions during the latter part of October, Stevens again met with Fanning and presented a sketch plan and elevation study, after which, Fanning told Stevens he had the job. On November 5, 1962, the parties entered into a written contract, which was a standard A.I.A. form of contract between an Owner and Architect. The contract provided that the building was to be "a multiple purpose building suitable to the needs of the Owner, at an approximate estimated cost of $250,000.00."

The parties disagree as to the subsequent events insofar as they indicate the type of building to be constructed under the contract. Fanning testified that Stevens agreed that he would design a prestressed concrete building of the required size, which would cost no more than $250,000. While he was not certain as to when this agreement was reached, he knew that it was prior to the time they attended the first meeting at which they sought financing, in the latter part of November, 1962. Stevens testified that he never agreed to design such building for $250,000, but that a prestressed concrete building was at all times an alternate proposal to a steel frame building; and that he advised Fanning that the prestressed concrete building would cost more than $250,000, but the additional cost could perhaps, be justified by insurance premium savings.

Stevens received the bids on the building and presented them to Fanning on December 18, 1962. The bids were based upon both steel frame and prestressed concrete types of construction. Those bids based on steel frame construction, totalled less than $250,000, but the bids based upon prestressed concrete construction, totalled $317,000. On December 21, 1962,

288

Fanning terminated the contract stating that Stevens had failed to design a 40,000 square foot building in prestressed concrete at a cost of $250,000, as promised.

Stevens then filed this suit contending that he had performed the contract as required until the time of Fanning's abandonment. The contract provided that in event the owner abandoned the work, the architect was entitled to a certain percentage of the total contract price, depending on the stage to which the architect's work had progressed. Stevens alleged that he had completed the stages of work through the receipt of bids, and that under the terms of the contract he was entitled to 80% of the contract price, or $15,535.65, less $1,000 previously paid to him. Fanning contended that he did not abandon the contract under its terms permitting abandonment upon the payment of certain sums to the architect, but rather terminated the contract because of the failure of Stevens to perform as required thereunder.

Stevens here contends that he did not have an obligation to design a building to be constructed for a maximum of $250,000, in that the contract provided:

"Witnesseth, that whereas the Owner intends to erect a multiple purpose building suitable to the needs of Owner, at an approximate estimated cost of $250,000.00 . . .

IV PROJECT CONSTRUCTION COST.

"6. Since the Architect has no control over the cost of labor and materials, or competitive bidding, he does not guarantee the accuracy of any statements or estimates of probable construction cost."

He argues that the figure of $250,000 is but "an approximate estimate" of which he made no guarantee.

The $250,000 figure did not, however, arise in a vacuum. This figure, and its accompanying phrase, was inserted in the contract as a result of the negotiations and conversations of the parties. The fundamental question in determining the meaning of a contract is always the intent of the parties. This intent is to be gathered by giving to the contract a fair and reasonable interpretation, from the language of the entire contract, considered in the light of the circumstances under which it was made. Gay v. S. N. Nielsen Co., 18 Ill App2d 368, 374, 375, 152 NE2d 468 (2d Dist 1958). A contract should be enforced according to the sense which the parties mutually understood it at the time it was made, with greater deference to be given to their clear intent than to any particular words which they may have used to express it. Keefer Coal Co. v. United Elec. Coal Cos., 291 Ill App 477, 10 NE2d 210 (3rd Dist. 1937).

Stevens made no objection at the trial to the testimony of Fanning that from the time of their first contact, he, Fanning, at all times had said that the cost of the building could not exceed $250,000. This was the limitation of his budget. Indeed, it appears from Stevens' own testimony that, at all times, he knew and understood that he had a $250,000 limitation within which to work. In view of the unanimity of the testimony of the parties relative to their understanding of the cost limitation and the objects and purposes they had in mind when executing the contract, we believe that by the insertion of the clause in the contract that the building was to be of "an approximate estimated cost of $250,000.00," they intended, and manifested their intent, that $250,000 was to be the maximum cost. Furst v. Board of Education, 20 Ill App2d 205, 217, 218, 155 NE2d 654 (2d Dist 1959).

■ This construction does not conflict with the language the parties actually used to express their intent. By use of the words "approximate estimated cost," the final construction cost would have had to have been substantially within the limit set forth. The use of this language prevented the result that any deviation above the expressed limit, no matter how slight, would have been a failure to perform under the contract. Nor does this clause conflict with the printed portion of the contract which recites that the architect "does not guarantee the accuracy of any statements or estimates or probable construction cost." There is no question of a guarantee at issue. Fanning contended that under the contract, as finalized, Stevens agreed to furnish plans and specifications to the end that the cost of construction would not exceed the specified amount; and the trial court so found. Under the law, if the bids received on the type of building Stevens was to design under the contract, clearly exceeded this limit, then he failed to perform his part of the contract. Ada Street M. E. Church v. Garnsey, 66 Ill 132, 134 (1872); Spitz v. Brickhouse, 3 Ill App2d 536, 123 NE2d 117 (1st Dist 1954); 5 Am Jur2d Architects, sec 17, p 679; 6 CJS Architects, sec 14(b), p 310.

Stevens contends that even if there was a limitation of $250,000 placed upon the project by the contract, he is still entitled to recover, as the bids he received for the building, based on steel frame construction, were within this limit. He contends that only the bids for the prestressed concrete construction were in excess of this amount and the trial court erred, as a matter of law, in finding that the parties modified the contract to provide for only prestressed concrete construction.

■■ Stevens misconceives the nature of the finding of the trial court. It found that the parties, subsequent to the date of the written contract, agreed that the building was to be of prestressed concrete design. This finding was not a modification of, or a change in the terms of the written contract, but rather a finding of an agreement which made more definite and certain that which was incomplete in the written contract. Whether the written contract was intended to be the complete and final agreement, must be determined from the language of the contract and the circumstances of the case. "If it is silent in essential particulars, parol evidence is admissible to establish the missing parts, although inadmissible to contradict those unambiguous terms expressed in the document." Spitz v. Brickhouse, 3 Ill App2d 536, 539, 540, 123 NE2d 117 (1st Dist 1954).

■■ The written contract provided only that the owner intended to construct a multiple purpose building suitable to his needs, at an approximate cost of $250,000. The contract was silent as to the dimensions, even though it is clear that prior to the execution of the contract it was understood that the building had to contain at least 40,000 square feet in order for Fanning to meet his dealership requirements. The contract was silent as to all aspects of the nature of the building to be designed. It is apparent that it was not complete and final, but contemplated that the parties would fill this void by agreements outside the written contract. As was stated in the Spitz case supra, at page 540:

"The form contract in the instant case is silent as to the style of the house to be designed, the number of its rooms, its dimensions, the quantity and quality of the materials to be used in erect-

292

ing it, and so on. In Blair v. School Dist. No. 141 of Smith County, 94 Kan 144, 146 Pac 347, the court said: 'There must be something outside the contract to determine these questions. The architect must have had instructions outside the contract with which to comply, in the preparation of his plans.' "

Thus, where, as here, the basic written contract does not purport to be a complete expression of the whole agreement and is silent as to the nature and specifications of the building to be designed, parol evidence is admissible to more fully elucidate the agreement as finally consummated. 49 ALR2d 679, 685, sec 3a; 5 Am Jur2d, Architects, sec 19, p 682. It was thus appropriate for the trial court to determine whether the type of construction was agreed to by the parties so as to fully vitalize the written contract of November 5th.

William Heckel, an architectural draftsman employed by Stevens, confirmed the testimony of Stevens that the prestressed concrete was always an alternate and was never promised at a cost of $250,000. Stevens accompanied Fanning to the Merchants National Bank to help Fanning secure financing. At this meeting he presented certain preliminary drawings, all of which showed prestressed concrete construction. The vice president of the bank testified that at this meeting it was discussed that the building would cost approximately $250,000, and while he wasn't told that they had definitely decided on prestressed concrete, no other type of construction was mentioned.

About a week later the parties went to a concern called Dovenmuehle, to seek financing. Fanning's attorney accompanied them. He testified that while in

the car, enroute to this meeting, no type of construction was discussed other than prestressed concrete. He further testified that at the meeting, the presentation to secure financing was based upon the building being constructed of prestressed concrete at an estimated cost of $250,000. Stevens testified that, at the Dovenmuehle meeting, they submitted the same drawings which were shown to the bank, all based upon prestressed concrete, and also some preliminary working drawings based upon a steel frame building. He stated that he never told the people at Dovenmuehle that he was considering only prestressed concrete or that he could construct the building out of prestressed concrete for $250,000. Apparently, however, the people at Dovenmuehle were given that impression, in that later the same day they called Fanning's attorney and suggested that he check on the architect, since the building could not be constructed of prestressed concrete for less than $315,000.

At the meeting of December 18th, when the bids were presented to Fanning, two acquaintances of Fanning were present. One testified that Fanning then asked Stevens whether he (Stevens) had told him (Fanning) that he could build a prestressed building for $250,000; and that Stevens answered, "yes." The other testified that Stevens answered that only one set of bids had been received and he thought he could reduce the final figure.

 There is complete conflict in the testimony as to whether Stevens said he would design a prestressed concrete building under the contract for $250,000. It was the duty of the trial court to make this determination of fact, and it is not for us to set aside this finding unless it is clearly and manifestly against the weight of the evidence. Spitz v. Brickhouse, 3 Ill App2d 536, 542, 123 NE2d 117 (1st Dist 1954). There is ample evidence to support the find-

ing of the trial court and, thus, no basis for this Court to substitute its judgment for that of the trial court.

Stevens also contends that Fanning had a duty to alter the plans to come within the cost limit, since a printed portion of the contract provided that if the estimated construction cost exceeded the limit provided and the owner did not approve an increase in the limit, the owner "shall cooperate in revising the project scope or quality or both, to reduce the cost as required, . . . ." Such contention cannot be sustained in that the trial court found that the parties contracted solely for a specific type of building at a given price, and it is undisputed that the architect did not produce such building at the agreed price.

The theory of the trial court in awarding to the plaintiff a judgment of $2,500, was that he was entitled to the reasonable value of his services up to the time the parties had definitely agreed that the building was to be prestressed concrete; that thereafter he failed to perform the contract as finalized; and that it was only from that time on, that plaintiff was not entitled to remuneration for his services. The trial court found that plaintiff's compensable services were worth $3,500, and that defendant had paid plaintiff $1,000.

■■■ We believe that since the understanding as to the type of construction was in fact an integral and essential part of the entire contract, as finalized, and it is undisputed that the plaintiff could not perform his part of the agreement as so-finalized, he is not entitled to any compensation under the contract. Ada Street M. E. Church v. Garnsey, 66 Ill 132, 134 (1872); Spitz v. Brickhouse, 3 Ill App2d 536, 538, 123 NE2d 117 (1st Dist 1954). However, no cross-appeal was filed challenging the right of the plaintiff to the reasonable value of his services for the period of time

indicated. Therefore, the judgment for the plaintiff in the sum of $2,500, is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.