JOHN ALLAN COMPANY, Petitioner-Appellant, *v.* BILLY HARVEY *et al.*, Respondents-Appellees.

(No. 68-95;

Third District—February 26, 1971.

Joseph A. Bailey and Jerome H. Torsen, both of Chicago, for appellant.

Fred Lambruschi and Herbert P. Veldenz, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The John Allan Company petitioned for a tax deed pursuant to Section 266 of the Revenue Act of 1939 as amended (1967 Illinois Revised Statutes, ch. 120, par. 747). The trial court entered an order directing the issuance of a tax deed to the tax purchaser, but within 30 days after entry of the order, appellees, Billy Harvey and Edna Harvey, filed a petition to set aside the court's tax deed asserting that they had never received notice. Following a hearing, the trial court sustained the taxpayers' petition to set aside the tax deed and denied appellant's petition for new trial.

The record discloses that the Harveys purchased the lot in question in 1958 and constructed a home on it. They failed to pay the 1962 real estate taxes. The Will County Collector proceeded with the annual tax sale, as a result of such delinquency, and on December 2, 1963, Interstate Bond Company purchased the Harveys' property at a public tax sale. Interstate Bond Company also paid the 1963 and 1965 taxes on the property. The 1964 general real estate taxes were paid by the Department of Welfare.

On May 6, 1966, Interstate Bond Company petitioned for a tax deed. Back taxes had never been paid by the tax delinquents. On September 30, 1966, Interstate Bond Company assigned its certificate of the purchase to the appellant, The John Allan Company. On October 3, 1966, The John Allan Company, the tax purchaser, applied for an order for issuance of a tax deed. The application set forth that all notices as required by law had been given. Attached to the application for the tax deed was an affidavit of Robert Krueger that he had personally served Billy Harvey and Edna Harvey with the notice required by law, that the application would be made to the court for tax deed on October 3, 1966. There was also attached a certificate of publication showing publication notice of the proceedings. Publication was made in the Labor Record in Joliet. As we have indicated, on October 3, 1966, the trial court entered an order directing the county clerk of Will County to issue a tax deed to The John Allan Company. On October 27, 1966, the Harveys filed a petition to vacate the order to issue

the tax deed, alleging that no notice as required by statute had been served on either of them as owners. A hearing was held on the petition to vacate on May 31, 1968, and the trial court allowed such petition to vacate.

Appellee Billy Harvey, one of the owners of the property, testified that the first time he knew someone was trying to take the property away from him was after the taxes were sold, and the lawyer for the petitioner called and told him that he would like to buy his property. He stated it was a Mr. Hammel who called. Mrs. Harvey also testified that on October 3, 1966, they got a letter from a Mr. Hammel stating that they were about to lose their house. Harvey also stated that he talked to a Mr. Meade of the Will County Public Aid office and Mr. Meade explained that he could lose his property and also told him that the Harveys would be notified before any buyer would go in for a tax deed. Mr. Harvey testified that in the summer of 1965 he went into the County Clerk's office to try to redeem his property and pay the back taxes, but that it took about $400 and he only had $300 and, therefore, the County Clerk could not accept part payment. Harvey also stated that during the period before October 3, 1966, he had been to see the Public Aid people seeking to have his back taxes paid as he was on Public Aid. The Public Aid office could not pay the 1962 taxes as he was not on Public Aid when taxes had become due. It did pay the 1964 taxes.

Harvey testified that Mr. Meade, of the Public Aid office, told him he was going to Springfield to see if he could get the money to pay the taxes and further testified that Mr. Meade did not tell him what would happen if he did not get the taxes paid, until sometime after the tax deed was issued on October 3, 1966. Mr. Meade testified that he had tried to help the Harveys get a loan to pay off the back taxes and other bills but was unsuccessful. He also stated that he obtained a copy of the legal notice of publication which had been in the Joliet Labor News specifying September 30, 1966, as the last time for the Harveys to redeem their property. He stated that he read parts of the notice to both of them but was not sure that they understood what he was trying to tell them. Mr. Harvey had only a third grade education and could not read. He was the father of five children and at one time had been convicted of a felony. Mrs. Harvey, who also testified, stated that she attended almost two years of high school. She also testified that Mr. Meade never told her there was a tax deed proceeding against them and that the first time the whole process was explained to them was when they got the letter from Mr. Hammel on October 3, 1966.

Allan Blair, who was called as a witness under Section 60, testified that he was treasurer and principal operating officer of The John Allan Company as well as one of the attorneys representing the company in the cause

before us. He stated that sometime prior to October 11, 1966, Mr. Harvey called him and came into his office at which time Blair showed Harvey a copy of the notice which petitioners contend was served on the Harveys and he asked Harvey if he got one of the notices. Blair said that Harvey told him he did not get one but his wife did.

Prior to the hearing the petitioners took the evidence deposition of Robert Krueger who was not called at the trial but whose deposition was read in evidence. The Harveys were not present at the taking of the deposition as they did not have an attorney at that time. In the Krueger deposition, Krueger testified that he felt he had personally served Mr. and Mrs. Harvey as it was not his practice to sign an affidavit for a file cover if he did not actually serve the people. Krueger was available to testify in Will County at the time of the hearing but his evidence deposition was read into the record (instead of his personal appearance).

The trial court found that the Harveys were never served with a notice as required by statute, and entered an order setting aside the tax deed order of October 3, 1966. A post-trial motion was filed by the tax purchaser setting forth (1) that the decision was against the manifest weight of the evidence, and (2) that the trial judge was influenced in his decision by the fact that Harvey had threatened the judge with physical harm; that the judge was trying to protect Mr. Meade of the Public Aid Department as he was threatened with a lawsuit by the Harveys; and, the judge was angered because petitioner would not accept a settlement offer made prior to trial. This post-trial motion was denied.

■■ The first issue for consideration is whether the trial court on the basis of the record, was justified in concluding that no personal service was had on Billy Harvey or Edna Harvey. The determination of a trial court should be reversed only if such determination is against the manifest weight of the evidence. Where the evidence is conflicting, as it is in the case before us, the determination of the trial judge should not be set aside because he believed one group of witnesses and rejects the stories of the others (*Hunter v. Demay*, 124 Ill.App.2d 429, 259 N.E.2d 291, 294). It is emphasized in the *Hunter v. Demay* case referred to that a court of review should not disturb the findings of the trial court unless they are manifestly against the weight of the evidence, and it is particularly true in close cases where the findings have been dictated to a large extent by the impressions of credibility received by the trial court from observation of witnesses.

The only true issue in the case before us is whether there was personal service on Mr. or Mrs. Harvey notifying them of the last date upon which they could redeem their property prior to the issuance of the tax deed. There were only three people who had any direct knowledge as to this

question, *i.e.*, Mr. Harvey, Mrs. Harvey, and Robert Krueger, the process server. Both of the Harveys specifically denied that any personal service was made upon them at any time. While there was testimony of Mr. Blair that Mr. Harvey told Mr. Blair that Mrs. Harvey was served, and that he, Mr. Harvey, was not, this statement was based on a conversation in Blair's office on October 11, 1966. The statement of Mr. Blair who was treasurer and principal operating officer of The John Allan Company was not supported by any other testimony. Petitioner contends that the testimony of Mr. Blair should be believed because he was called as an adverse witness under Section 60 of the Practice Act. Certainly the testimony of Mr. Blair was considered by the trial judge, but there was nothing in such testimony which would establish conclusively that there was personal service on the Harveys in the cause before us.

The testimony of the process server, Mr. Krueger, was based primarily on his general course of conduct, and his testimony did not indicate that he had any personal recollection of service on the individual or individuals or could recall the individuals who were supposed to have been served by him. The evidence, thus, was in direct conflict, since the Harveys denied any personal service on them. The trial judge was, therefore, in position where he could determine which of the parties to believe. He had opportunity to see the Harveys as they testified, and, while he did not see Mr. Krueger, he could analyze the results of the deposition which was read into evidence. On the basis of the determination of the trial court below it is apparent that he believed the testimony of the Harveys. We cannot, therefore, say from our examination of the record, that the decision of the trial court was contrary to the manifest weight of the evidence.

■■ When we consider all of the testimony of the Harveys in the cause with regard to their failure to pay taxes and their efforts to obtain money to pay the taxes, it cannot be stated arbitrarily, as appellee contends, that none of the Harvey testimony should have been believed by the trial judge. There were contradictions which, on the record, do not appear to have been deliberate, and, in most instances, these contradictions were not material. Considering the background of Mr. Harvey, who had only a third grade education, and, also, that events as to which he testified occurred over a period of several years, it would not be proper to conclude that his testimony should be disregarded because it may be contradictory as to collateral issues. His testimony as to the failure to make personal service on him was quite specific. The record also shows that the Harveys had been in contact with the Public Aid Department on numerous occasions, and it was logical for the trial court to assume that if any personal service had been made upon them, they would have shown such notice to the Public Aid representatives or at least advised them about it. We

should also observe that, while Mr. Harvey had been previously convicted of a felony, he was still competent to testify (1969 Illinois Revised Statutes, ch. 51, par. 1), and his prior conviction would only affect the weight of his testimony.

■■ Therefore, in considering the entire record, while it is true that there are some inconsistencies and discrepancies in the testimony of Billy Harvey and Edna Harvey, the trial court apparently concluded that the inconsistencies did not appear to arise from a deliberate attempt to falsify but rather from lack of knowledge about the proceedings in which they were involved. We do not believe we would be justified in reversing such decision of the trial court.

■■ In the motion for reconsideration and to vacate the judgment, one of the attorneys for The John Allan Company set up as grounds for vacation of the order, that Billy Harvey had threatened the judge which physical harm; that the judge was trying to protect Mr. Meade of the Public Aid Department, as the Harveys had threatened to sue him if they lost their property; and, finally, that the trial judge was angered because The John Allan Company would not accept a settlement prior to trial which the judge felt was fair to both sides. The tax purchaser concedes that during the trial, the judge was fair in every respect, but argues that these three factors "subconsciously" affected the judge and caused him to rule as he did. There was no showing of any "conscious" affirmative misconduct or improper action on the part of the trial judge in the cause based on the assertions in the verified motion or otherwise. The record shows no basis for reversal by reason of the denial of the post-trial motion of appellant.

■■ The order entered in this cause did not contain a specific provision in compliance with Section 751, ch. 120 of 1967 Illinois Revised Statutes, providing for reimbursement to the deedholder by the Harveys. This cause is, therefore, remanded for the sole purpose of providing for modification of the order of the trial court in accordance with the provisions of such Section 751 of the Revenue Act.

Cause remanded with directions.

STOUDER and SCOTT, JJ., concur.