FRANK W. KURZ, Plaintiff-Counterdefendant-Appellee, *v.* QUINCY POST No. 37, THE AMERICAN LEGION, Defendant-Counterplaintiff-Appellant.

(No. 11516;

Fourth District—May 16, 1972.

414

Keefe, Snowden & Brennas, of Quincy, (Jerry L. Brennan, of counsel,) for appellant.

Lewis, Blickhan & Garrison, of Quincy, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

The complaint in this case was filed for recovery or architectural fees by an architect against Post 37 of the American Legion. A counter-claim was filed by Post 37 against the architect for return of the architectural fees that had been paid. The basic issue before the trial court was whether or not the architect was entitled to his fees when the bids on the construction of the building designed were alleged to have substantially exceeded his estimated costs.

In the fall of 1963, Kurz was contacted by Post 37 to design a legion hall. He first went over a number of the locations and gave his recommendations to the legion. A specific site was agreed upon in late 1964. At that time Kurz went to a number of meetings with the committees involved and drew up a proposed set of plans and specifications for the construction of this hall. At the time these preliminary plans were drawn up, the architect gave an estimate to Post 37 of a cost of approximately $100,000.00. Some of Post 37's witnesses stated that he was given a maximum cost figure of $100,000.00; Kurz denied being given a maximum figure. The preliminary plans, the site selection and the cost estimates were submitted to the membership in December of 1964 and the membership determined to go ahead with the construction program. At that time a standard AIA contract was entered into with Kurz providing for architectural fees based upon seven percent of the project cost. The contract also provided for the payment of the fee at various intervals

and according to the terms of this contract, at the time of receipt of bids, eighty percent of the architectural fee was due and owing.

Clause IV 6 of the contract executed between Kurz and Post 37 provided as follows:

"Since the architect has no control over the cost of labor and materials or competitive bidding he does not guarantee the accuracy of any statement or estimates of probable construction costs."

After the signing of this contract, further design changes were made. Post 37 desired that a portion of this building be rented and had solicited various persons and agencies in the community for commitments to rent the unused space in the building. A renter was found and by reason of the particular needs of this agency, the plans were redesigned to suit its particular needs. At that time another estimate was submitted at approximately $122,000.00.

Prior to the submission of the plans for bids, the architect became aware that there were certain subsoil problems that existed by reason of construction in an adjacent area. These problems required substantial modification of the existing plans and three additional designs were submitted to Post 37, varying from the elimination of a basement to the raising of the building and the purchase of additional property and varying in estimated cost from $130,000.00 to $231,000.00. One of the plans was finally agreed upon. At this meeting the architect testified that he stated in his opinion the costs for the plan agreed to would be somewhere between $150,000.00 and $160,000.00. This was denied by Post 37. In December of 1966, the project was submitted for bids and the lowest bid received was $205,000.00. Thereafter, Kurz conferred with the various contractors and was able to obtain a reduction in the amount of the bids by $23,000.00. The bids were submitted to Post 37 and after review, it decided not to proceed with the project.

Pending the various discussions and during the time in which the foregoing plans were being submitted, the architect was billing Post 37 according to the contract and had been paid a total of $7,125.00. This suit of the architect was for the difference of that amount of the eighty percent of the cost at the time bids were received. Post 37 counterclaimed for refund of the fees paid on the ground that there had been an agreement that the costs of the project would not exceed $150,000.00.

The lower court, after hearing the testimony, rendered judgment for Kurz in the amount of $3,067.00, being the difference between eighty percent of the fee on $182,000.00 and the amount that had previously been received by Kurz. Post 37 appeals this judgment and the dismissal of this counterclaim on three grounds—(1) that the judgment was against the manifest weight of the evidence; (2) that there is no basis

for the judgment rendered; and (3) that there was an implied contract as a matter of law that the construction costs would not exceed the estimate.

■■ The basic issue here is factual, whether there was an agreement to fix a maximum limitation on the costs of construction of the building. Parol evidence may be admitted to prove such an agreement where the written agreement is not intended to be the complete agreement between the parties. (*Fuchs & Lang Co. v. R. J. Kittredge & Co.,* 242 Ill.. 88, 89 N.E. 723.) In similar architectural contracts the courts have permitted oral testimony to establish agreements outside the contract where the written contract is not complete or is ambiguous. *Stevens v. Fanning,* 59 Ill.App.2d 285, 207 N.E.2d 136; *Spitz v. Brickhouse,* 3 Ill.App.2d 536, 123 N.E.2d 117.

■■ The trial court did in this case admit oral testimony as to what the agreement was and there was conflicting testimony introduced. The question therefore becomes one of fact whether there was an agreement as to the maximum cost for the building. The trial court in its judgment order did not make any specific findings, although at the time of the rendition of the judgment the trial judge stated that he did not find that the evidence established an agreement as to maximum costs entered into prior to the written contract and, therefore, the written contract would govern. It has long been established that in the determination of facts, where the evidence is disputed and conflicting, the findings and the resolution of the trial judge are given the same weight as the verdict of a jury and will not be set aside unless contrary to the manifest weight of the evidence. (*C. A. Aderdung Plumbing & Heating Co. v. Stanton,* 115 Ill.App.2d 308, 253 N.E.2d 160.) The trial court's determination is not set aside because he believed or credited one group of witnesses and did not credit the other. (*John Allan Co. v. Harvey,* 267 N.E.2d 533.) Furthermore, it has been stated that if the trial court's resolution of the factual disputes finds support in the evidence, its resolution is not contrary to the manifest weight. *Carey v. I. J. Kayle & Associates,* 122 Ill. App.2d, 403, 259 N.E.2d 304.

■■ A somewhat skeletal review of the testimony shows that the foregoing finding of the trial court, if it may be characterized as such, is not contrary to the manifest weight of the evidence. The architect testified that at the first meetings, prior to the execution of the written contract, he submitted plans and gave an estimate of $100,000.00 for the projected costs. He testified that he was not given a maximum figure. Post 37's witnesses stated that the architect was given a maximum figure of $100,000.00. The contract was signed and then further plans submitted

ranging from $122,000.00 to over $231,000.00. Post 37 by its own witnesses, approved a plan of $127,000.00. At a subsequent meeting the architect, after the subsoil problems had been discovered, estimated according to his testimony, costs of $150,000.00 to $160,000.00. There is some conflict with Post 37's witnesses on this point as to whether this estimate was given, but apparently Post 37 was informed by one of its members that the costs would exceed $150,000.00. It continued to proceed with the project. These actions undermine and conflict with the testimony of Post 37's witnesses that a maximum figure of $100,000.00 was given to the Plaintiff and give support to the architect's testimony that no maximum was given. As such, it cannot be said by this reviewing court that the finding and holding of the trial court was contrary to the manifest weight of the evidence and should be reversed.

■■ The second point raised by Post 37 is that there was no basis for the amount of the judgment. The bids totaled $205,000.00 but were reduced by $23,000.00 by negotiation with the contractors leaving a project cost of $182,000.00. By contract the architect was entitled to seven percent of the project cost for his fees. He was to be paid eighty percent of his fee after the bids were let. These fees were therefore calculated properly and are in accordance with the contract.

■■ The architect contends in his brief that the fee should have been based upon the $205,000.00 figure and not the reduced figure of $182,000.00. However, Kurz did not file a cross appeal and therefore he is estopped from raising that point. *Jovan v. Starr,* 87 Ill.App.2d 350, 231 N.E.2d 637; *Bawden v. Furlong,* 16 Ill.App.2d 174, 147 N.E.2d 889.

■■■ The third contention of Post 37 is that there was an implied contract that the estimate would approximate the costs and where the costs exceed the estimate the architect has breached his contract and is not entitled to his fees. The fatal flaw in this argument is that there was a written contract which provided that the architect be paid on a certain basis at set times. The contract also provided that the estimates were just estimates and nothing more. The trial court found, as previously discussed, that there was no set maximum figure. Under such circumstances, the law in Illinois is well settled. The Supreme Court in *Walker v. Brown,* 28 Ill. 378, stated on page 383:

"As in physics two solid bodies cannot occupy the same space at the same time, so in law and common sense, there cannot be an express and an implied contract for the same thing, existing at the same time. This is an axiomatic truth. It is only when parties do not expressly agree that the law interposes and raises a promise."

Other cases reiterating this principle are *Goodman v. Motor Products*

*Corp.*, 22 Ill.App.2d 378, 161 N.E.2d 31; *Borrowdale v. Sugarman,* 347 Ill.App. 390, 107 N.E.2d 45; and *Stewart v. McIntosh,* 316 Ill.App. 212, 44 N.E.2d 451.

■■ Under the present circumstances, this result is not as inequitable as it is contended. The architect expended a considerable amount of time, inspected sites, drafted several sets of plans, revised the plans to accommodate a renter, and further revised plans and submitted additional proposals upon discovery of the subsoil problem. The contract provided for payment and there was no maximum cost in the written contract. Under these circumstances, it would not be appropriate to deny the architect what he had contracted for.

Two cases are relied upon by Post 37 in prosecuting this appeal, namely, *Spitz v. Brickhouse,* 3 Ill.App.2d 536, 123 N.E.2d 117, and *Stevens v. Fanning,* 59 Ill.App.2d 285, 207 N.E.2d 136; In *Spitz,* the court found that there was an oral agreement as to the maximum cost. Similarly in *Stevens,* a maximum figure was written in a portion of the contract and was construed by the court to be an agreement that the costs would not exceed a certain amount. The factual determination of the trial court that there was no maximum limitation agreed upon, clearly distinguishes those cases from the case at hand.

For the foregoing reasons, the judgment of the trial court is affirmed.

TRAPP, P. J., and SIMKINS, J., concur.