MARIE MARTH *et al.*, Plaintiffs-Counterdefendants-Appellees, *v.* ILLINOIS WEATHER-SEAL, INC., Defendant-Counterplaintiff-Appellant.

First District (5th Division)   No. 76-1010

Opinion filed June 17, 1977.—Rehearing denied July 28, 1977.

Robert L. Murray, of Oak Park (Murray & Houha, of counsel), for appellant.

Alan C. Hoffman, of River Grove (Francis X. Riley, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Illinois Weather-Seal, Inc. (Weather-Seal), defendant and counter-plaintiff, appeals from a judgment entered on its counterclaim for the balance due on a contract, which judgment allowed a set off in favor of Marie Marth and Ann Marth, plaintiffs and counterdefendants. The sole issue on appeal is whether the evidence supports the judgment of the trial court. We affirm. The pertinent facts follow.

On October 31, 1973, the Marths entered into a contract with Weather-Seal for the purchase and installation of new windows for their home. The contract called for removal of the existing windows and installation of two picture windows, eight sliding windows and four double-hung windows. The windows to be installed were referred to as "Nu-Sash" windows. The contract stated that the Marths had paid $100 and were to pay $4646.82 upon completion of the work. After the windows were installed the Marths paid Weather-Seal $1500 on the contract, leaving a balance of $3146.82

The Marths filed the instant complaint against Weather-Seal alleging that due to negligent installation, water leaked through the windows and caused damage to the interior of their home. They further alleged that water accumulates in the sills because the windows are not level, and that Weather-Seal has not responded to their numerous calls. The Marths prayed judgment for $4000 to correct the alleged improper installation and for property damage caused thereby.

Weather-Seal answered the complaint, denying its allegations, and further counterclaimed against the Marths, alleging a balance due on the contract of $3146.82. The Marths denied the allegations of the counterclaim.

After a trial without jury, judgment was entered "on the counterclaim in the amount of $896.82, after a set off of $2250 having been allowed on plaintiffs' complaint." Weather-Seal's motion to vacate the judgment and for new trial was denied. Weather-Seal then brought this appeal.

The following testimony was adduced at trial.

John Moran was called to testify on behalf of the Marths. The parties stipulated that Moran is an architect, that he examined the premises in question, and that he would testify "as to what should be done to correct the condition of the windows that were installed by the defendant

* * *." Moran testified as follows. Upon inspection of the premises he found the installation of the sliding windows defective. The Nu-Sash window is a good product, but here the installation was wrong. In his opinion the problem could be resolved by re-leveling the aluminum sills, which would require taking the frame apart and recutting the jambs. Drilling new weepholes might alleviate the problem also. The windows are racked, and just shimming the sills would not make a tight "weather-type" condition at the corners. A drawing of a corner of the window, jamb and sill of the type in question was received in evidence by stipulation of the parties. He testified that the work was unmitered, and even if it were caulked and not in a "plumb condition" it would leak. Referring to the drawing he stated that the screw holes should be caulked before screws are driven through the aluminum sill into the existing wood. When Moran was asked on direct examination what it would cost to repair the windows, the following colloquy occurred:

"A: I would estimate that it would take—because it's not just a matter of replacing the sills, it's a matter of changing the jamb, as I said, the left or the right, whichever the case. The window has to be taken down. It would take—nine windows—I would estimate two and a half hours to three hours per window of work time. At whatever rate the people have, I would say a minimum of $2000.

Q: All right.

A: For 24 hours.

THE COURT: That's labor?

THE WITNESS: And material."

Moran billed the Marths $150 for his consultation fee.

On cross-examination Moran testified that he examined the house, inside and out, and that it is a frame building. The windows are all new replacement windows, not storm windows attached to existing windows. He leveled and checked them and found that "the windows in question, the nine, most of them were unleveled at the sill." He further stated that there is no such thing as a completely weather-tight sliding window.

Marie Marth testified as follows. She entered into the contract with Weather-Seal. No caulking was done upon installation of the windows. In the spring she noticed water collecting in the troughs of the nine sliding windows. The water leaked into the house. She notified Weather-Seal about the condition and Mr. Jensen came out and "re-sealed" a window and drilled weepholes in the windows. That did not correct the problem, and water still accumulates in the windows. The water stained her wood paneling and draperies. The draperies could not be cleaned and had to be replaced. She paid $261.45 for new draperies.

On cross-examination Marie Marth testified that the contract price for the windows was $4520.30, without tax, and that she has not paid the

$3146.82 balance. When Mr. Jensen came out he caulked some screws. She further stated that she was not unhappy with the sliding windows, but that she was unhappy with the water that collects.

Ann Marth's testimony was essentially the same as that of Marie Marth with respect to the contract and water.

Richard Macken, President and Sales Manager of Weather-Seal, testified as follows. The balance due on the Marths' contract is $3146.82. He visited the Marths on three occasions. On his first visit he measured the windows and took the order. His second visit was in regard to a change of molding. His third visit, in June 1975, was to inspect the installation. During the inspection he noted the condition of each window in regard to the Marths' complaint about water. The inspection indicated that the job was done in a workman-like manner, and that the windows were properly installed. Any window that moves can never be completely "air tight." He saw water stains on the lining of the draperies which he assumed were caused by water coming in through the screw holes on the bottom of the windows before they were caulked. Water had also stained the finish on the Marths' wood paneling.

On cross-examination Macken testified that it was not raining on the day of his inspection. On a query from the court he stated that he did not run a hose against the windows; neither did he use a level on the sills.

Eric Jensen, installation manager of Weather-Seal, testified as follows. He is responsible for the installation of Nu-Sash windows, but he was not present during their installation in the Marth residence. He visited the Marths' home at least twice in response to their complaints about the windows. On one visit he caulked all the screw holes in the aluminum sills of the sliding windows. His last visit there was in response to a complaint about water standing in the window tracks.

On cross-examination of Jensen, the following exchange occurred:

"[MR. HOFFMAN, attorney for the Marths]: Mr. Jensen, drawing your attention to caulking that was done around certain screw holes, isn't it a fact that all of the sliding windows were installed improperly and the caulking was not installed at the time of the initial installation?

A: That's correct.

Q: And because of that, isn't it also a fact that there was damage done to the Marth residence?

A: That's correct."

On appeal Weather-Seal argues that the evidence does not support the judgment of the trial court. In particular, Weather-Seal contends that the trial court was swayed by the architect's testimony on behalf of the Marths and paid little attention to any of the other witnesses. In essence,

Weather-Seal asks this court to examine the credibility of the witnesses and re-weigh contradictory evidence.

■■ It is well established that the trial court is in a better position to determine the credibility of the witnesses and the weight of the evidence presented. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624; *Kurz v. Quincy Post. No. 37, American Legion* (1972), 5 Ill. App. 3d 412, 283 N.E.2d 8.) A court of review will not set aside that determination because the trial court believed or credited one group of witnesses and did not credit the other group. *John Allan Co. v. Harvey* (1971), 131 Ill. App. 2d 626, 267 N.E.2d 533.

In the instant case the record clearly shows that when Macken inspected the installation, he did not run a hose against the windows to check for leakage. Moreover, although Macken testified that the windows were properly installed, Jensen responded affirmatively when upon cross-examination he was asked whether the windows were improperly installed and not initially caulked. Further, the parties stipulated that the architect Moran would testify as to what should be done to correct the condition of the windows. Moran clearly stated that in his opinion, to correct the defective installation, the sills should be releveled by taking the frame apart and recutting the jambs, and that just shimming the sill would not make it tight at the corners.

At the conclusion of the closing argument the trial court stated that the testimony of the architect Moran was very clear, and that neither Macken nor Jensen testified to running a hose against the window to test for leaks. This finding of the trial court involves the credibility of the witnesses and the weight of their testimony, and we will not substitute our judgment for that of the trial court in passing on the weight of the evidence.

The architect further testified that it would take two and one half to three hours to repair each window, or a total of 24 hours; and that the minimum cost of repair would be $2000 for labor and material. We note that the architect did not itemize costs in support of the estimate. However, Weather-Seal did not challenge the estimate at trial for lack of a factual basis.

■■ An estimate of the cost of repairs by a person qualified in a certain class of work, while not as persuasive as it might be, is nonetheless admissible as a basis upon which a reasonable cost may be determined. (*Lucas v. Bowman Dairy Co.* (1964), 50 Ill. App. 2d 413, 200 N.E.2d 374.) It has been stated that such an opinion, although unsupported by statements of fact, is sufficient to support a finding by the trial court when unopposed by other evidence. (*Springfield, Effingham & South Eastern R.R. Co. v. Peters* (1881), 8 Ill. App. 300.) Moreover, even improper or generally incompetent evidence, when not objected to, is given its natural

probative effect and force, and is entitled to the same weight as if it were legally admissible. *Bunch v. Rose* (1973), 10 Ill. App. 3d 198, 293 N.E.2d 8; *Gomez v. Resolute Insurance Co.* (1971), 2 Ill. App. 3d 180, 276 N.E.2d 69; *Ingram v. Hammar Brothers White Lead Co.* (1933), 273 Ill. App. 152.

■■■ We conclude that the issue of the cost of repairs was a question of fact to be determined by the trial court on the basis of all the evidence presented. Insofar as the record discloses no challenge to the costs underlying the estimate, we cannot say that the allowance of $2000 for the cost of repairs based on the estimate is against the manifest weight of the evidence.

■■ In addition to the $2000 cost of repairs, other elements which comprise the $2250 setoff allowed by the trial court are $100 for damage to the Marths' draperies and $150 for the architect's consultation fee. Both the Marths and Moran testified that $150 was billed by the architect and paid by the Marths. The Marths further testified that the water caused stains on the draperies which had to be replaced and cost the Marths $261.45. Macken of Weather-Seal also testified that he saw stains on the draperies which he assumed were caused by water coming in through uncaulked screw holes. We find that the $150 consultant fee, and the $100 allowed by the trial court for damages to the draperies, are costs adequately supported by the evidence adduced at trial and properly allowed the Marths as a set off.

■■ It is fundamental that a court of review will not disturb the findings of a trial court unless against the manifest weight of the evidence. In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. (*Valasquez v. Yellow Cab Co.* (1975), 32 Ill. App. 3d 934, 337 N.E.2d 365; *Gary v. Rogers* (1968), 104 Ill. App. 2d 154, 243 N.E.2d 665.) Based on the record before us we cannot say that a conclusion opposite to that reached by the trial court is clearly apparent.

Accordingly, the order of the circuit court of Cook County, in which judgment was entered on Weather-Seal's counterclaim in the amount of $896.82, after allowing the Marths $2250 on their complaint as a setoff, is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.