TERMINAL-HUDSON OF ILLINOIS, INC., Plaintiff-Appellant, v. GOLDBLATT BROTHERS, INC., Defendant-Appellee.

First District (5th Division) No. 76-394

Opinion filed July 22, 1977.

William M. Doty, Jr., of Chicago, for appellant.

Clifford A. Harstad, of Chicago (Bernard Rosencranz, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Terminal-Hudson of Illinois, Inc., brought action in detinue against defendant, Goldblatt Brothers, Inc. Following a trial without jury, judgment was entered in favor of defendant. Plaintiff appeals. The issues are whether plaintiff has sufficiently identified the property allegedly detained to warrant recovery, and whether the judgment of the trial court is against the manifest weight of the evidence. We affirm.

On October 3, 1973, plaintiff filed the instant Complaint in Detinue on information and belief. It alleged that defendant detains from the plaintiff the goods and chattels of the plaintiff at four locations in Chicago, Illinois; namely, at: 4700 South Ashland Avenue, 333 South State Street, 443 East 34th Street, and 3311 West 26th Street. The goods and chattels are therein repeatedly set forth after each address, in identical words and figures, as follows:

"1—American Optical Veropter
1—American Optical Projector
1—American Optical Stand & Chair
1—Lensometer—miscellaneous manufacture;
Approximately 250 pair assorted eyeglass frames;
Patient's prescription records;
Assorted office supplies;
1—R. C. Allen adding machine;
Assorted optical tools
1—set sample lenses
2—two-drawer filing cabinets;"

The listing for the latter three addresses each additionally included between the fourth and fifth items listed above:

"1—American Optical Karotometer;"

The complaint further alleged that plaintiff is the lawful owner of said property valued at $100,000, and that defendant refused to deliver possession of the property when plaintiff made demand therefor on or about October 1, 1973. Plaintiff prayed judgment for possession of that property, the value of the property not delivered, and damages for its detention.

Defendant did not answer the complaint in detinue, but did, however,

file a separate complaint against plaintiff for breach of the September 10 agreement. The two cases were initially consolidated but thereafter severed prior to trial of the detinue action. The breach of contract case is therefore not before us.

The following evidence was adduced at trial.

Plaintiff is in the business of operating concession optical departments in retail outlet stores. On September 10, 1971, plaintiff entered into a written agreement with defendant whereby plaintiff was given the right to operate optical departments in various retail department stores owned by defendant. The contract period commenced on October 1, 1971, and was to terminate on September 30, 1976. Paragraph 5 of the contract provides in pertinent part:

"TERMINAL agrees that it shall furnish all of the furniture, fixtures, equipment, inventory and supplies in connection with the operation of its departments. At the expiration of this agreement, whether by time or otherwise, all furniture and fixtures exclusive of refracting equipment, diagnostic instruments, tools, office furniture, and accessories, whether new, additional, substitute or replacement items of property so placed in GOLDBLATT'S optical departments, shall become the sole and exclusive property of GOLDBLATT with free and clear title to same without compensation being paid or owing to TERMINAL therefor. * * * ."

Herman G. Buckley was called by plaintiff as an adverse witness and testified. He is general manager of defendant and held that position at the time the relationship between defendant and plaintiff commenced. He identified the September 10 contract, and it was admitted into evidence. In October 1973, he refused to allow plaintiff to remove equipment, but not cards, from three locations; the equipment retained was either being used by another optical company or was in storage; and at that time four of eight stores had been closed down. None of plaintiff's prescription cards was retained by defendant. However, there may be some available unknown to him. Plaintiff had purchased and paid for optical examination equipment from defendant prior to October 1971, for a price of $8900. About 50% of the equipment is still on the premises, and the remainder had been removed by plaintiff.

Michael Blend, plaintiff's supervisor, testified. On October 1, 1973, he went to the outlet at 4700 South Ashland Avenue. He loaded records and equipment from the optical department onto a dolly and proceeded to his truck. Two men who identified themselves as defendant's security personnel restrained him from removing the material. A man who identified himself as Mr. Fitzgerald, a manager of the store, was present,

and the police were called. After the police arrived, the material loaded onto the dolly was returned to the optical department. On direct examination the following exchange occurred:

"Q Will you describe for me in more detail exactly what the materials were you went to remove, for the record, please?

A We went to—I guess, number one, we wanted to remove our patient record cards; number two, we wanted to remove all of the optical equipment. That was the refracting equipment that the doctors would use to examine the patients. Third, we wanted to remove the inventory of frames, tools, office supplies—just the miscellaneous items that were on the premises there.

Q Can you describe for us what a prescription record card would be?

A A prescription record card is the copy that is kept in our optical office which contains the patient's name that was examined, address, telephone number, the patient's prescription that was filled, the frames selected, just—In short, it is a complete record of the particular transaction that occurred and the date the patient came in for examination or to have a prescription filled."

Blend further testified. He left the store at 4700 South Ashland Avenue and went to defendant's stores at 443 East 34th Street, 3311 West 26th Street, and 333 South State Street. He was denied admission to these stores. Defendant would not let him remove any equipment, records or inventory, except that at two of the stores he was allowed to remove glasses awaiting delivery to patients. Prior to October 1973, plaintiff closed down three "locations." The prescription cards from the closed locations were taken to defendant's store at 333 South State Street, and the equipment was taken to 1148 West Chicago Avenue for storage.

Theodore Shanbaum, president of plaintiff, testified. The most important consideration in the purchase of an optical business is the number of patients' prescription cards generated. Each card is worth $100 to $150 based on return visits by the patient and his referrals. No prescription cards, equipment or inventory were in the possession of plaintiff or an affiliated company. He was the sole shareholder and president of Dal-Tex Laboratories during the relevant period. Dal-Tex is a wholesale optical laboratory which fabricates glasses in accordance with prescriptions sent in by opticians, optometrists and ophthalmologists throughout the country. Dal-Tex filled orders from the prescription cards at issue, but the copy sent to the lab contained only that information necessary to fabricate the lens and frame; the copy did not contain confidential matters between patient and doctor.

Hy Stoller, treasurer of plaintiff, testified. In the normal course of business he kept plaintiff's financial records. He identified a document

prepared by him which reflects an approximate inventory of the merchandise, supplies and equipment in each of plaintiff's outlets on October 1, 1973. The document was received into evidence. On cross-examination Stoller testified that the "inventory record" was not a physical inventory but that the figures were based on the contents of 86 stores in the parent chain, and that it was "more or less a standard inventory of merchandise and equipment in all the stores." The document was not dated, and was compiled "the last three or four months."

Ronald Ritholz and Dr. Richard Rosin, both previously affiliated with plaintiff, testified and essentially corroborated Shanbaum's testimony as to the value of the prescription cards. Each stated that approximately 20,000 cards had been generated by plaintiff.

Norris Richardson testified on behalf of defendant. During the relevant period he was first floor assistant manager of the store at 333 South State Street. On October 5, 1973, he observed men in the optical department packing and removing boxes of merchandise from the store. They also removed the contents of filing cabinets. He knew that the men were not defendant's employees, but he recognized one of them as someone from the optical department.

James McShan testified on behalf of defendant. He is operation superintendent in charge of security at defendant's store located at 443 East 34th Street. On October 3, 1973, he saw Dr. George Davis of the optical department carry boxes of prescription forms and glasses from the store. Dr. Davis was accompanied by a man whom he had previously seen in the store. He advised them to leave the boxes in the store, but the men told him that the merchandise belonged to them and he accepted the statement at face value.

Blend testified for plaintiff in rebuttal. In October 1973, he assisted Dr. George Davis in removing personal items from one of the locations. In January 1974, he had occasion to be in defendant's State Street store and he observed a woman in the optical department writing postcards from a stack of prescription cards.

Following arguments of counsel, the trial court found that plaintiff failed to show by a preponderance of the evidence a right to recover in detinue, and entered judgment in favor of defendant. Plaintiff appeals from the judgment.

OPINION

■■ Initially, we note that both parties proceeded voluntarily to present evidence in the detinue trial without any answer having been filed by defendant, or ordered filed, and without objection at any time. However, where plaintiff has gone to trial without defendant having filed an answer and without demanding that an answer be filed, any objection

to the failure to answer is waived. (*Slezak v. Fleming* (1946), 392 Ill. 387, 64 N.E.2d 734; 30 Ill. L. & Prac. *Pleading* §233 (1957).) Furthermore, failure to answer a statement made on information and belief in the pleading is not an admission. *People v. Boening* (1966), 68 Ill. App. 2d 1, 14, 215 N.E.2d 842.

■■ Plaintiff's complaint filed in the circuit court was captioned "Complaint in Detinue." The matter was treated in the trial court and is argued in the parties' briefs on appeal as the still existing common law remedy of detinue. Since there is no separate statute regulating an action in detinue, the Civil Practice Act is applicable to the proceedings. (*Martin v. Cole* (1947), 331 Ill. App. 597, 73 N.E.2d 633.) Section 31 of the Civil Practice Act has abolished the distinction in names, forms and pleadings of law actions (Ill. Rev. Stat. 1973, ch. 110, par. 31); and this includes proceedings formerly known as actions in detinue. (*L & LC Trucking Co. v. Jack Freeman Trucking Co.* (1976), 36 Ill. App. 3d 186, 343 N.E.2d 716.) Plaintiff's right of recovery in this matter is to be determined in accordance with the pleadings and proofs presented. Ill. Rev. Stat. 1973, ch. 110, par. 50(1); *Libby Furniture & Appliance Co. v. Nabors* (1967), 86 Ill. App. 2d 381, 230 N.E.2d 28.

■■ In an action to recover personal property or its value the defendant is entitled to judgment in the absence of certainty of proof as to specific property demanded and its value. (*Martin v. Cole*.) In the case at bar, the trial court prior to the close of plaintiff's case-in-chief indicated that the record was almost devoid of any showing of what property was on the premises, and at the close of all of the evidence, found that plaintiff failed to prove its right to recovery by a preponderance of the evidence.

Plaintiff argues that under the facts and circumstances of this case, it has identified the inventory and equipment with reasonable certainty to warrant recovery. At trial Blend, plaintiff's supervisor, testified as to the property he attempted to remove on October 1 from four locations. When asked to describe the material in detail, he referred to it in general terms as "patient record cards," "refracting equipment" and "the inventory of frames, tools and office supplies."

Plaintiff thereafter introduced into evidence an "approximate inventory" of the type and quantity of merchandise and equipment maintained in 86 outlets of its parent corporation. It is urged by plaintiff that since defendant's general manager testified that some of plaintiff's equipment was still on the premises, defendant was in a unique position to know exactly what goods were held and to contradict the "approximate inventory" if believed inaccurate.

We find that the document referred to as an "approximate inventory" which does not purport to be a physical inventory of what was actually on the premises, but rather an estimate based on the representative contents

of 86 other stores, is insufficient to support a judgment for the return of specific goods. The document is undated, and Stoller testified that he compiled it "the last three or four months." The credibility of the document as an inventory depends on the systematic entry of the information contained therein in the regular operation of a business. The trial court could have concluded that the document was prepared for trial and not as a record relied upon in the regular course of business. See *Ocasio-Morales v. Fulton Machine Co.* (1973), 10 Ill. App. 3d 719, 295 N.E.2d 329.

As stated in *Martin v. Cole*, at page 600: "In actions of this kind, certainty is required in the specification of the property demanded and its value." We find that in the instant case the evidence adduced at trial is insufficient for lack of specificity to support the allegations set forth in the complaint. None of the items allegedly detained was identified with sufficient particularity to warrant judgment for the return of property in kind. Moreover, no value could be attributed to any item in the absence of specific identification so that a judgment in the alternative for value could be entered. *Libby Furniture & Appliance Co. v. Nabors; Martin v. Cole.*

■■ Liability for the return of goods detained or their value cannot arise unless it is shown that defendant has possession of the goods. (*Martin v. Cole*; see generally 66 Am. Jur. 2d *Replevin* §164 (1973).) As to the prescription cards, although Blend testified that defendant would not allow him to remove any material including prescription cards from the premises, Buckley, defendant's general manager, stated that to his knowledge defendant did not retain the cards. Richardson testified that he observed plaintiff remove the contents of filing cabinets from the State Street store, and McShan testified that plaintiff removed boxes containing prescription forms from another location. Although Blend testified that about three months after his attempt to remove the cards he noticed a woman in the optical department of one of defendant's stores addressing postcards from a stack of prescription cards, there was no further identification of these cards or testimony that these were the cards claimed by plaintiff.

Based on the testimony presented, the trial court could have concluded that defendant did not have possession of the prescription cards. Where testimony is conflicting the trier of fact is in a better position to determine the credibility of the witnesses and the weight of the evidence presented. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624; *Rhodes v. Sigler* (1975), 27 Ill. App. 3d 1, 325 N.E.2d 381.) A reviewing court will not set aside that determination because the trial court believed or credited one group of witnesses and did not credit the other group. *John Allan Co. v. Harvey* (1971), 131 Ill. App. 2d 626, 267 N.E.2d 533.

■■■ It is well established that a court of review will not disturb the findings of a trial court unless against the manifest weight of the evidence. In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. (*Valasquez v. Yellow Cab Co.* (1975), 32 Ill. App. 3d 934, 337 N.E.2d 365; *Gary v. Rogers* (1968), 104 Ill. App. 2d 154, 243 N.E.2d 665.) Based on the record before us we cannot say that a conclusion opposite to that reached by the trial court is clearly apparent.

For the foregoing reasons, the judgment of the circuit court of Cook County in favor of defendant is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.