CATHERINE ANDERSON, Plaintiff-Appellant, *v.* GERALD BASHAM, Defendant-Appellee.

Second District   No. 76-229

Opinion filed December 14, 1977.

Willard J. Stepek and Richard Hakanson, both of Chicago, for appellant.

Andrew H. Marsch, of Wheaton, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

This case evolved from the intersection collision of automobiles being

operated by plaintiff, Catherine Anderson, and defendant, Gerald Basham. The jury returned a verdict in favor of the defendant and responded affirmatively to a special interrogatory that plaintiff was contributorily negligent. The trial court entered judgment on the general verdict and denied plaintiff's post trial motion for judgment *n.o.v.* or a new trial. Plaintiff appeals.

Plaintiff contends: (1) that the trial court erred in denying her motion for directed verdict at the close of all the evidence and her post trial motion for judgment notwithstanding the verdict and the jury's answer to the special interrogatory, or, in the alternative, a new trial; (2) that remarks of defendant's counsel during closing argument were prejudicial; and (3) that the trial court erred in refusing to give an instruction tendered by the plaintiff.

The collision occurred at 4:50 p.m. on June 20, 1973, at the intersection of Grant Street and Belmont Road in Downers Grove, Du Page County, Illinois. Belmont Road is a four-lane preferential highway running north and south and Grant Street connects with it in a T-intersection running east from Belmont. There is a stop sign on Grant Street for westbound automobiles entering Belmont. There is a hill approximately one-half block south of the intersection and motorists at the intersection cannot see traffic beyond it. The posted speed limit on Belmont Road was 35 miles per hour. Traffic was very heavy, it being a weekday rush hour, and cars were backed up in the northbound outer lane with intermittent movement on Belmont in that lane.

Plaintiff testified that she was driving northbound on Belmont Street at about 30 miles per hour. When she reached the top of the hill her car was in the inner traffic lane and she took her foot from the accelerator and her speed decreased as she approached the intersection at Grant Street. She observed a car standing in the southbound inner lane of Belmont, with its turn signal on, waiting to turn left onto Grant and another car moving northward in her inner lane three or four car lengths ahead of her. She testified that a car came from Grant Street and collided with the right front of her car. She did not see it until just before the impact and then turned slightly to her left as she applied her brakes. Her car ricocheted off defendant's car and struck another vehicle stopped in the southbound inner lane and she received personal injuries. Other witnesses testified plaintiff had told them shortly after the accident that she could remember nothing about how it had occurred.

Defendant testified that he had been westbound on Grant Street and stopped at the stop sign at Belmont; he looked to the south and had an unobstructed view from the intersection to the hill but could not see beyond it. He stated he then "eased out" into traffic through a gap

between the lined up cars in the outer lane of Belmont and was hit by plaintiff's car as he entered the inner lane. He testified he did not see plaintiff's vehicle at any time before the impact.

William Leone, an acquaintance of defendant, was the driver of the car stopped in the southbound lane waiting to turn left onto Grant. He testified that defendant did stop at the stop sign then proceeded through the outer lane of Belmont and stopped again at the northbound inside lane. Leone testified he then looked south toward the hill and observed plaintiff's vehicle approaching in the inner lane of Belmont at a speed of at least 50 miles per hour. At this time, he stated, defendant was "edging out" from Grant and was struck by plaintiff with about one-quarter of defendant's car in the inner lane when the collision occurred. Roger Svirik, the driver of a car stopped in the outside northbound lane of Belmont south of its intersection with Grant Street, testified that he heard the "roar of a speeding engine" and observed plaintiff's vehicle through his rear view mirror about two car lengths behind him and to his left in the inner lane. He estimated plaintiff's speed at 40 to 45 miles per hour. He testified her car then "shot past" him and he observed the collision. He saw defendant's car "inching out" from the stop sign and onto Belmont for 15 to 20 seconds before the collision but testified that defendant's car was not moving when it was struck by plaintiff's vehicle.

Plaintiff contends the trial court erred in allowing the issues of defendant's negligence and plaintiff's contributory negligence to be submitted to the jury. She asserts that defendant was negligent as a matter of law by failing to yield the right-of-way to plaintiff, who was traveling on a preferential highway protected by a stop sign, and that there was no evidence of contributory negligence on the part of plaintiff. Alternatively, plaintiff seeks a new trial asserting the general and special verdicts are against the manifest weight of the evidence.

The evidence as it relates to any negligence of defendant or contributory negligence of plaintiff must be considered pursuant to the standard set down in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. Unless we can conclude, after viewing all the evidence in its aspect most favorable to defendant, that it so overwhelmingly favors plaintiff no contrary verdict based on it could ever stand, a directed verdict or judgment *n.o.v.* may not be entered.

In considering the evidence in this light it appears defendant stopped at the stop sign protecting Belmont Street and looked to the south where he had an unobstructed view for about one-half block to the crest of the hill, but not beyond it. Seeing no approaching vehicles in the inner lane, he then moved his vehicle out through a gap between the waiting cars in the outer lane of Belmont and was "edging" into Belmont's inner lane when

struck by plaintiff's car. He did not see her car prior to the collision. Plaintiff testified she reached the crest of the hill traveling in the inner lane of Belmont at about 30 miles per hour and decreased speed as she approached Grant Street. She saw other cars at the intersection but did not see defendant's until just before the collision. Other witnesses testified plaintiff approached the intersection from the hill at estimated speeds of 40 to 50 miles per hour with her engine roaring and that while defendant's car protruded into the inner lane of Belmong it was not moving at impact.

The applicable statute (Ill. Rev. Stat. 1975, ch. 95½, par. 11—904) requires that a motorist who confronts a stop sign protecting a preferential highway may, exercising reasonable care, proceed across the intersection after stopping and yielding the right-of-way to other vehicles on the through highway which may then present an immediate hazard. Plaintiff relies primarily on *Hale v. Cravens* (1970), 129 Ill. App. 2d 466, 263 N.E.2d 593, to support her position that defendant violated the statute and was negligent as a matter of law in failing to yield the right-of-way to her.

■■ The statute did not, however, provide an absolute right-of-way for plaintiff traveling on the preferential highway but required only that defendant, after stopping, yield to such vehicles on the through highway as constituted an immediate hazard. (*McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 462, 328 N.E.2d 679, 681.) The Illinois decisions do not precisely define a formula for determining whether a particular driver has complied with the statute and generally hold that the issue involves consideration of the relative speeds and distances of the vehicles from the intersection which must be resolved by the jury. *Pennington v. McLean* (1959), 16 Ill. App. 2d 577, 583, 158 N.E.2d 624, 627; *Oothoudt v. Woodard* (1971), 132 Ill. App. 2d 203, 207, 269 N.E.2d 511, 513-14.

■■ On this record the jury could consider that defendant stopped as required of him then slowly entered the intersection. He had looked towards the hill, which obstructed his view further to the south, but it seems apparent plaintiff had not yet come into view over it. Defendant did not enter the intersection with the "immediate hazard" of plaintiff's vehicle in view and cannot be held to have breached his duty of ordinary care, as a matter of law, if he failed to look again after entering the controlled intersection in that circumstance. *McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 328 N.E.2d 679; *Spiotta v. Hamilton* (1970), 120 Ill. App. 2d 387, 256 N.E.2d 649; *Neurohr v. Richmond* (1967), 78 Ill. App. 2d 467, 222 N.E.2d 808.

In considering next whether under the *Pedrick* standard plaintiff was contributorily negligent we note that the court in *Conner v. McGrew*

(1961), 32 Ill. App. 2d 214, 177 N.E.2d 417, perhaps the most often cited case illustrating the duty of a driver of a vehicle on a preferential highway, stated:

> "The authorities agree that a driver on a preferential highway does not have an absolute or unqualified right of way that can be asserted regardless of circumstances, distances or speed. Such a driver may not plunge blindly ahead in reliance upon an assumption that the other motorist will obey the law and yield the right of way, nor may he heedlessly proceed into obvious danger. Rather, there is a duty upon such driver to observe due care in approaching and crossing the intersection and to drive as a prudent person would to avoid a collision when the danger is discovered or, by the exercise of reasonable care, should have been discovered. [Citations.]
>
> The Illinois decisions, in applying this rule, have consistently held that it is the function of the jury to determine whether the judgment of the driver on the preferential highway conformed to the standards of the reasonable and prudent man. [Citations.]" (32 Ill. App. 2d 214, 217-18, 177 N.E.2d 417, 418.)

In *Fincham v. Cooney* (1976), 42 Ill. App. 3d 719, 721, 356 N.E.2d 445, 447, the court determined the standard of care required of such drivers as set forth in *Conner* was not changed when the *Pedrick* test superseded the former "any evidence of negligence" test when considering the direction of a verdict, and is still valid.

■■ Here, the jury by its answer to the special interrogatory specifically found plaintiff guilty of contributory negligence. There is evidence plaintiff came over the hill and proceeded towards the intersection at an excessive speed and did not see defendant until an instant before impact. Her preferential right-of-way over drivers entering the highway was tempered by a duty to exercise ordinary care in approaching the intersection, in discovering any danger and avoiding a collision. (*Gettemy v. Grgula* (1975), 25 Ill. App. 3d 625, 628, 323 N.E.2d 628, 630; *Reed v. Williams* (1973), 9 Ill. App. 3d 742, 744, 292 N.E.2d 426, 428.) It is preeminently a function of the jury to determine whether plaintiff conformed in this circumstance to the standard of a reasonable man and we see no basis to set aside its finding.

In viewing all of the evidence most favorably to defendant, we cannot say a verdict for defendant could never stand nor can we say as a matter of law that defendant was negligent and plaintiff was free from contributory negligence or that the jury's verdict and special finding were against the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32; *Terminal-Hudson of Illinois, Inc. v. Goldblatt Brothers, Inc.* (1977), 51 Ill. App. 3d 199, 366 N.E.2d 486;

*Rhodes v. Oliva* (1973), 13 Ill. App. 3d 849, 301 N.E.2d 126.) We find the verdicts of the jury are adequately supported by the evidence produced in the trial of this cause.

■■ Plaintiff next contends that the trial court erred in failing to sustain plaintiff's objection to several remarks made by defendant's counsel in closing argument. For example, referring to plaintiff, counsel stated: "If your friends, acquaintances, your attorney, people you wish to believe tell you something often enough, you are going to believe it yourself." Plaintiff objected to this argument stating it implied that plaintiff's friends and her attorney had influenced her testimony regarding the circumstances of the accident. While there was evidence that plaintiff had stated shortly after the accident that she could not then remember what happened, there was no evidence that anyone had spoken to her about how she should testify or in any way improperly influenced her testimony. The argument by counsel was improper and should not have been made. The trial court, however, ably responded to plaintiff's objection by indicating to the jury that no improper inference should be drawn from defense counsel's remark. While we agree with plaintiff that every litigant must be given a fair trial free from prejudical conduct of counsel who attempts to supply inferences not supported by the evidence, we believe that the effect of the overreaching argument in this case was harmless in light of the balancing response to plaintiff's objection made by the trial court. We cannot conceive that this comment could have improperly influenced the outcome of the case. (See *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 254 N.E.2d 453.) Similarly, we have considered plaintiff's other contentions of prejudicial argument and find them to be without merit.

The final error urged by plaintiff is that the trial court refused to give an instruction tendered by plaintiff. The instruction is not one contained in the Illinois Pattern Jury Instructions and related to the question of whether defendant did in fact look in the direction of plaintiff's approaching vehicle at the time he stated that he did yet did not see it. The record supplied to this court on appeal does not include a transcript or abstract of the conference on instructions. We are unable to determine the nature of defendant's objection to the instruction made at the conference or the basis for its refusal by the trial court. Plaintiff concedes the applicability of *Enlow v. Illinois Central R.R. Co.* (1968), 103 Ill. App. 2d 269, 243 N.E.2d 847, in which this court held that claimed errors in instructions need not be considered where the conference on instructions has not been included in the record on appeal. The trial court's refusal to give this instruction may well have been based upon its reference to a "preponderance of the evidence" test rather than the preferred "more probably true than not true" language contained in IPI. In any event, we

need not further consider this claim of error. We have reviewed the instructions which were given by the trial court and find they correctly and fairly informed the jury as to the law applicable to this case.

For the reasons stated, we affirm the order of the trial court denying plaintiff's motion for judgment *n.o.v.* or for a new trial.

Affirmed.

RECHENMACHER, P. J., and BOYLE, J., concur.