NOTICE

Decision filed 02/13/09. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0684

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| HERBERT KUNKEL and JERAL DEAN KUNKEL, | ) Appeal from the<br>) Circuit Court of<br>) St. Clair County. |
| Plaintiffs-Appellees, | ) |
| | ) |
| v. | ) No. 06-AR-860 |
| | ) |
| P.K. DEPENDABLE CONSTRUCTION, LLC,<br>and PETER KOFARAGO, d/b/a P.K. Dependable<br>Roofing and Construction Company, | )<br>)<br>) Honorable |
| | ) Vincent J. Lopinot, |
| Defendants-Appellants. | ) Judge, presiding. |

_____

JUSTICE SPOMER delivered the opinion of the court:

The defendants, P.K. Dependable Construction, LLC, an Illinois limited liability company, and Peter Kofarago, doing business as P.K. Dependable Roofing and Construction Company, appeal the order of the circuit court of St. Clair County that entered a judgment in favor of the plaintiffs, Herbert Kunkel and Jeral Dean Kunkel, in the amount of $6,725 for compensatory damages and $6,151.50 in attorney fees and costs. We restate the issues on appeal as follows: (1) whether the circuit court erred in finding the defendants liable to the plaintiffs for a breach of contract and warranty, (2) whether the circuit court erred in its determination of the amount of compensatory damages, and (3) whether the circuit court's award of attorney fees and costs is improper. For the reasons that follow, we affirm that portion of the judgment that awarded compensatory damages of $6,725, but we vacate the award of attorney fees and costs of $6,151.50.

FACTS

The plaintiffs filed a complaint against the defendants, alleging a breach of contract

1

and warranty in count I and a violation of sections 2Q(c) and 2Z of the Illinois Consumer Fraud and Deceptive Business Practices Act (the Act) (815 ILCS 505/2Q(c), 2Z (West 2002)) in count II. The complaint alleged that on July 25, 2003, the plaintiffs entered into a contract with the defendants for the replacement of the roof on their residence, which included a five-year warranty for defects in workmanship. According to the complaint, the roof the defendants installed was defective, and despite numerous demands to comply with the warranty and numerous attempts by the defendants to repair the problems with the roof, the roof continued to leak and needed to be replaced. In addition, the complaint alleged that the defendants failed to provide the plaintiffs with a copy of the "Home Repair: Know Your Consumer Rights" pamphlet prior to the execution of the contract, as required by section 20 of the Illinois Home Repair and Remodeling Act (815 ILCS 513/20 (West 2002)).

On March 30, 2007, the circuit court held a bench trial on the plaintiffs' complaint. Jeral Dean Kunkel testified that in 2003, she and her husband were having problems with their roof leaking over their porch. At that time, there were no other leaks in the roof. They entered into a contract with the defendants to replace the roof. The contract was admitted into evidence. The contract provided that the plaintiffs were to pay $4,522 for the roof replacement and that the defendants would warrant their workmanship for five full years from completion. The contract also provided that upon tearing off the roof, the defendants would check for sheeting damage and, if they discovered damage, would replace the wood at an additional cost. Mrs. Kunkel testified that prior to entering into the contract, the defendants did not give them any pamphlets and, specifically, did not give them a pamphlet called "Home Repair: Know Your Consumer Rights."

Mrs. Kunkel testified that she witnessed some employees of the defendants, while tearing off the roof, knocking the stucco siding loose. She complained and the employees attempted to patch those areas with cement. The defendants completed the roof, and due to

2

some sheeting damage, the total bill was $5,623. The Kunkels paid the bill in full, and copies of the checks used for payment were admitted into evidence. The roof was completed on approximately August 12, 2003. A few days later, during the first rain following the roof replacement, the roof began leaking inside the house. The rain came into the house on both sides of a dormer. After a foundation was established for Mrs. Kunkel to refer to contemporaneous notes she made over the following months, she testified to a series of calls and attempts by the defendants to correct the problems. Photographs of water stains on the ceiling of the home and pots and buckets used to catch the water coming into the kitchen were admitted into evidence.

According to Mrs. Kunkel, the calls and attempts by the defendants to correct the problems with the roof continued over the course of the next three years. Mrs. Kunkel also wrote a letter during this time period, explaining some of the problems with the roof. This letter, which was admitted into evidence, does not contain a demand for a return of their payment but instead requests that the defendants fix the problems. In addition, there was no evidence regarding whether Mrs. Kunkel sent the letter to the defendants via certified mail. Mrs. Kunkel estimated that the defendants attempted to fix the leaks between 20 and 25 times. Although the defendants were able to fix a leak in the front of the house above a storeroom, the kitchen and dormers continued to leak. The circuit court admitted an estimate into evidence without objection, which reflected that it would cost approximately $1,475 to replace the kitchen ceiling due to the water damage.

Tony Fuller, a self-employed roofing contractor for 20 years, testified that he examined the plaintiffs' roof at their request on June 11, 2006. He observed that the roof was heavily tarred on top of the shingles. He also observed the water stains on the interior of the home. It was his opinion that in order to resolve the leaks, it would be necessary to tear the roof off and start again to see what was underneath and what was causing the leaks. He also

3

opined that it would be necessary to install an aluminum pan underneath the shingles to slide under the stucco siding against the wood on the dormer walls to make sure that the walls did not leak and did not need a lot of tar on them. This would ensure, according to Mr. Fuller, that any water that got under the stucco would be diverted on top of the shingles. Mr. Fuller's estimate for replacing the roof was admitted into evidence without objection. According to his estimate, the cost would be $5,250 and would include a five-year labor warranty.

Herbert Kunkel testified as an adverse witness during the defendants' case in chief. He testified that the defendants never told him that there was a problem with the poor condition of the stucco siding that would impact the roof. Tim Utley, an employee of the defendants, testified that he did some of the work on the plaintiffs' roof. He further testified that based on his 26 years of experience, the condition of the sheeting at the time the defendants tore off the old roof indicated that there had been leaks inside the house previously. Mr. Utley also testified, contrary to the testimony of Mrs. Kunkel, that he did not tear up the stucco when tearing off the roof and did not attempt to repair the stucco with cement. He testified, contrary to the testimony of Mr. Fuller, that it would be impossible to slide flashing underneath the existing stucco because the condition of the stucco was so poor. He also testified, contrary to the testimony of Mr. Kunkel, that he told Mr. Kunkel that he needed to replace the stucco because that was the source of the leaking. According to Mr. Utley, because Mr. Kunkel refused his suggestion to replace the stucco, he did what he considered to be the next best thing, which was to shingle up to the dormer walls and put down R-140 rubberized caulk, which is a tarlike substance commonly used in the roofing industry. On cross-examination, Mr. Utley testified that he did not attempt to use flashing under the stucco as recommended by Mr. Fuller's testimony.

Peter Kofarago testified that he is the owner of P.K. Dependable Roofing and Construction Company. He testified that he is not in the business of repairing stucco. He

4

expressed his opinion that based on the condition of the sheeting on the plaintiffs' roof at the time he began to tear it off, there had to be leaking in the interior of the home prior to the roof replacement. He testified that he explained to Mr. Kunkel that based on the poor condition of the stucco siding on the home, he would not be able to install flashing and that if the stucco was not replaced, he could not guarantee that the roof would be leakproof around the wall lines. According to Mr. Kofarago, Mr. Kunkel denied that the stucco was the problem and insisted it was a problem with the roof. It was Mr. Kofarago's opinion that Mr. Fuller's suggestion to install a bed pan would be ineffective because the condition of the stucco was so poor that the stucco would crumble. On cross-examination, Mr. Kofarago testified that he no longer participates in manual labor and was not present for much of the time the roof was being replaced. He explained that he did not put language in the contract or warranty that he could not guarantee the wall lines due to the stucco issue because he did not know about the problem until the old roof had been torn off. He also testified that it would not be necessary to replace the roof in order to correct the problem.

The affidavit of the plaintiffs' counsel regarding the amount of attorney fees and costs incurred by the plaintiffs was also admitted into evidence. The affidavit states that the plaintiffs' counsel and other members of his law firm expended approximately 36 hours in work related to the litigation of this case. The total amount of fees and costs associated with pursuing the plaintiffs' causes of action against the defendants was $6,161.50, which represents attorney fees in the amount of $5,812.50 and costs in the amount of $349.

On August 15, 2007, the circuit court entered an order finding that the defendants had breached the contract and warranty and awarding the plaintiffs $6,725 in damages on count I of the complaint. We note that this amount represents the amount of the estimate for the interior damage to the home from the leaking and the amount of the estimate for the replacement of the roof. On count II of the complaint, the circuit court found that the

5

defendants violated sections 2Q(c) and 2Z of the Act (815 ILCS 505/2Q(c), 2Z (West 2002)), and the court awarded the plaintiffs attorney fees and costs in the amount of $6,151.50, which was the amount reflected in plaintiffs' counsel's affidavit. On September 13, 2007, the defendants filed a motion to reconsider, which the circuit court denied on November 8, 2007. On December 7, 2007, the defendants filed a timely notice of appeal.

ANALYSIS

The first issues on appeal are whether the circuit court erred in finding the defendants liable to the plaintiffs for a breach of contract and warranty and in setting the amount of compensatory damages it awarded to the plaintiffs for that breach. "The standard of review in a bench trial is whether the judgment is against the manifest weight of the evidence." *Chicago Pizza, Inc. v. Chicago's Pizza Franchise Limited USA*, 384 Ill. App. 3d 849, 859 (2008). " 'A judgment is against the manifest weight of the evidence only when the opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence.' " *Chicago Pizza, Inc.*, 384 Ill. App. 3d at 859 (quoting *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001)). "As the trier of fact, the trial judge was in a superior position to judge the credibility of the witnesses and determine the weight to be given to their testimony." *Chicago Pizza, Inc.*, 384 Ill. App. 3d at 859. "When contradictory testimony that could support conflicting conclusions is given at a bench trial, an appellate court will not disturb the trial court's factual findings based on that testimony unless a contrary finding is clearly apparent." *Chicago Pizza, Inc.*, 384 Ill. App. 3d at 859.

When we apply these principles to the circuit court's finding of a breach of contract and warranty, it is clear from the above summary of the testimony that in making its determination, the circuit court had to resolve conflicts in the evidence. There is ample evidence in the record to support the circuit court's finding that the problems with the roof were a product of the defendants' defective workmanship, and the circuit court's rejection of

6

what amounted to an impossibility defense involved a credibility determination and a resolution of contradictory evidence, which we will not disturb.

With regard to the circuit court's determination of damages, it is clear from the record that this determination was based upon the estimate given by Mr. Fuller regarding the cost to replace the roof and the estimate admitted into evidence regarding the cost to replace the kitchen ceiling. The measure of damages for the breach of a contract when a contractor has provided defective performance is generally the cost of correcting the defective condition. *Arch of Illinois, Inc. v. S.K. George Painting Contractors, Inc.*, 288 Ill. App. 3d 1080, 1082 (1997). Contrary to the defendants' assertions, a diminution of value is not the correct measure of damages unless the defects can only be corrected at a cost unreasonably disproportionate to the benefit of the purchaser or if correcting the defects would entail an unreasonable destruction of the builder's work. *Arch of Illinois, Inc.*, 288 Ill. App. 3d at 1082. Mr. Fuller testified that in order to ensure that all the leaking was corrected, it was necessary to replace the roof. Although the defendants' witnesses testified to the contrary, this created a contradiction that was within the circuit court's province to resolve. Because a contrary finding is not clearly apparent, we will not disturb the circuit court's resolution of conflicts in the testimony.

The defendants argue that Mr. Fuller's estimate is "invalid" because he did not testify that his estimate was reasonable and necessary and his estimate did not contain a breakdown of the charges for labor and materials. However, we note that the defendants did not challenge the admission of the estimate into evidence for a lack of a factual basis and did not cross-examine Mr. Fuller regarding an itemization of labor and materials. In addition, the defendants introduced no contrary evidence of the cost to replace the roof. "An estimate of the cost of repairs by a person qualified in a certain class of work, while not as persuasive as it might be, is nonetheless admissible as a basis upon which a reasonable cost may be

7

determined." *Marth v. Illinois Weather-Seal, Inc.*, 50 Ill. App. 3d 577, 581 (1977). "[S]uch an opinion, although unsupported by statements of fact, is sufficient to support a finding by the trial court when unopposed by other evidence." *Marth*, 50 Ill. App. 3d at 581. We also note that in *Northern Illinois Gas Co. v. Vincent DiVito Construction*, 214 Ill. App. 3d 203, 215 (1991), the case upon which the defendants rely, the estimate at issue was not accompanied by the testimony of a person qualified to give an opinion regarding the estimate, and that case is therefore inapposite. Accordingly, we find that the circuit court did not err in its determination of damages.

Finally, we turn to the issue of whether the circuit court's award of attorney fees and costs is improper. Our standard of review is whether the circuit court abused its discretion. *Schorsch v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 286 Ill. App. 3d 1028, 1031 (1997). "Illinois follows the 'American Rule,' which provides that absent statutory authority or a contractual agreement, each party must bear its own attorney fees and costs." *Negro Nest, LLC v. Mid-Northern Management, Inc.*, 362 Ill. App. 3d 640, 641-42 (2005) (citing *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 572 (2000)). "Statutes permitting the recovery of costs are in derogation of the common law and must be strictly construed." *Negro Nest, LLC*, 362 Ill. App. 3d at 642. Section 10a(a) of the Act (815 ILCS 505/10a(a) (West 2002)) provides, "Any person who suffers actual damage as a result of a violation of [the] Act committed by any other person may bring an action against such person." Section 10a(c) provides that a court may award reasonable attorney fees and costs to the prevailing party. 815 ILCS 505/10a(c) (West 2002). Therefore, in order to prove a private right of action under section 10a of the Act, and thus recover attorney fees and costs, the plaintiffs must show actual damage proximately caused by the defendants' violation of the Act. See also *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 179-80 (2005).

8

The circuit court's award of attorney fees and costs was based on its finding that the defendant violated sections 2Q(c) and 2Z of the Act (815 ILCS 505/2Q(c), 2Z (West 2002)). Section 2Z of the Act provides, "Any person who *knowingly* violates the *** Home Repair and Remodeling Act *** commits an unlawful practice within the meaning of [the Consumer Fraud and Deceptive Business Practices] Act." (Emphasis added.) 815 ILCS 505/2Z (West 2002). Section 20(a) of the Home Repair and Remodeling Act (815 ILCS 513/20(a) (West 2002)) provides, "For any contract over $1,000, any person engaged in the business of home repair and remodeling shall provide to its customers a copy of the 'Home Repair: Know Your Consumer Rights' pamphlet prior to the execution of any home repair and remodeling contract." Here, the plaintiffs provided uncontradicted testimony that the defendants did not provide them with the brochure. However, the plaintiffs provided no evidence on the defendants' state of mind in not providing the brochure, and there is no evidence in the record to support a knowing violation of the Home Repair and Remodeling Act. Accordingly, there was no violation of section 2Z of the Act.

Although the record does not reflect that the plaintiffs proved a violation of section 2Z of the Act, section 35 of the Home Repair and Remodeling Act, which provides in subsection (a) for the enforcement of that statute by the Attorney General or a State's Attorney, does state in subsection (b) that "*any* violation of this Act shall constitute a violation of the Consumer Fraud and Deceptive Business Practices Act." (Emphasis added.) 815 ILCS 513/35(a), (b) (West 2002). An interpretation of subsection (b) that would provide a private right of action is seemingly incongruent with subsection (a), which provides for the enforcement of the Home Repair and Remodeling Act by the Attorney General or a State's Attorney, and also 2Z of the Act, which requires a knowing violation. However, there is no need to resolve this inconsistency in this case because, in any event, there must be a showing of actual damage in order to sustain a private right of action under the Act. See 815 ILCS

9

505/10a(a) (West 2002); see also *Avery*, 216 Ill. 2d at 179-80. Here, the plaintiffs introduced no evidence that the defendants' failure to provide the brochure proximately caused their damages. Accordingly, the plaintiffs did not acquire a private right of action under the Act for the defendants' failure to provide them the "Home Repair: Know Your Consumer Rights" brochure.

We note that the circuit court also found a violation of section 2Q(c) of the Act (815 ILCS 505/2Q(c) (West 2002)). That section provides, "A person engaged in the business of home repair *** who fails or refuses to commence or complete work under a contract or an agreement for home repair[] shall return the down payment and any additional payments made by the consumer within 10 days after a written demand sent to him by certified mail by the consumer or the consumer's legal representative ***." 815 ILCS 505/2Q(c) (West 2002). In finding a violation of section 2Q(c), the circuit court necessarily construed the defendants' defective performance as a failure to "complete work under a contract" within the meaning of section 2Q(c).

We disagree that the defendants violated section 2Q(c), for two reasons. First, a reading of section 2Q(c) that equates a defective-performance situation with a failure to "complete" work would render every breach of contract for defective performance a consumer fraud. We do not believe that the legislature intended that result, especially in a case such as this, where the defendants made extensive attempts to correct the defective condition. Second, even if the facts of this case fell under the purview of section 2Q(c), there is no evidence that the plaintiffs sent a written demand by certified mail to the defendants for a refund, as required by that section. For these reasons, the record does not support a finding that the defendants violated section 2Q(c). Because the circuit court erred in finding that the plaintiffs sustained a private right of action under the Act, we find that it abused its discretion in awarding the plaintiffs attorney fees and costs.

10

Although the defendants argue on appeal only that the amount of attorney fees was incorrect and do not argue that the plaintiffs failed to sustain a private right of action under the Act, the scope of our review is not limited to the issues preserved for appeal. See *Schutzenhofer v. Granite City Steel Co.*, 93 Ill. 2d 208, 210-11 (1982). The Illinois Supreme Court has interpreted Illinois Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)) (formerly Rule 341(e)(7)), "which expresses the waiver doctrine, as 'an admonition to the parties, not a limitation upon the jurisdiction of the reviewing court.'" *Schutzenhofer*, 93 Ill. 2d at 211 (citing *Hux v. Raben*, 38 Ill. 2d 223, 224 (1967)). Moreover, Illinois Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5))) provides, "In all appeals the reviewing court may, in its discretion, and on such terms as it deems just, *** enter any judgment and make any order *** and grant any relief *** that the case may require." Because it is clear from the record that the plaintiffs were unable to sustain a private right of action under the Act as a matter of law, we will not sustain the circuit court's award of attorney fees and costs to the plaintiffs.

## CONCLUSION

For the foregoing reasons, we affirm that portion of the judgment which awarded compensatory damages of $6,725 and vacate that portion of the judgment which awarded attorney fees and costs of $6,151.50.

Affirmed in part and vacated in part.

WELCH and GOLDENHERSH, JJ., concur.

11

NO. 5-07-0684

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| HERBERT KUNKEL and JERAL DEAN KUNKEL, | ) Appeal from the<br>) Circuit Court of<br>) St. Clair County. |
| Plaintiffs-Appellees, | ) |
| | ) |
| v. | ) No. 06-AR-860 |
| | ) |
| P.K. DEPENDABLE CONSTRUCTION, LLC, and PETER KOFARAGO, d/b/a P.K. Dependable Roofing and Construction Company, | )<br>)<br>)<br>) Honorable<br>) Vincent J. Lopinot, |
| Defendants-Appellants. | ) Judge, presiding. |

**Opinion Filed**:  February 13, 2009

**Justices**:  Honorable Stephen L. Spomer, J.

Honorable Thomas M. Welch, J., and
Honorable Richard P. Goldenhersh, J.,
Concur

**Attorney for Appellants**  Gary A. Mack, Law Offices of Gary A. Mack, P.C., 2001 North 17th Street, Belleville, IL 62226

**Attorney for Appellees**  Timothy A. Gutknecht, Crowder & Scoggins, Ltd., 121 West Legion Avenue, P.O. Box 167, Columbia, IL 62236-0167