2020 IL App (1st) 190428-U

FOURTH DIVISION
February 13, 2020

No. 1-19-0428

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| LAW OFFICE OF TIFFANY M. HUGHES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 M1 113865 |
| | ) | |
| VANESSA WEREKO, | ) | Honorable |
| | ) | H. Yvonne Coleman, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming the judgment of the circuit court of Cook County (i) awarding unpaid attorney fees, costs, and interest to a law firm in a breach of contract action against a former client and (ii) dismissing counterclaims for breach of contract and negligence.

¶ 2    The Law Office of Tiffany M. Hughes (the firm) filed a breach of contract action in the circuit court of Cook County against its former client Vanessa Wereko (Wereko), seeking amounts allegedly owed for legal services performed by the firm in Wereko's divorce proceedings.  Wereko filed counterclaims for breach of contract and negligence, claiming that the firm's withdrawal from representation of Wereko in her divorce proceedings violated their retainer agreement and ultimately caused her to incur significant and unnecessary financial

expenditures. After a bench trial, the circuit court awarded unpaid attorney fees, costs, and interest in excess of $12,000 to the firm and dismissed with prejudice Wereko's counterclaims. Wereko challenges the circuit court's orders in this *pro se* appeal. For the reasons discussed herein, we affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4     Wereko filed a petition for dissolution of marriage against her husband, Francesco Potenza (Potenza), in the circuit court of Lake County (Lake County court) in March 2015. Pursuant to a retainer agreement dated May 25, 2016, Wereko retained the firm to represent her in the divorce proceedings in exchange for an initial retainer of $10,000. Among other things, the firm represented Wereko in a pretrial conference and prepared an allocation judgment regarding parental responsibilities and parenting time in July 2016.

¶ 5     On August 24, 2016, approximately one month before the scheduled trial date, the Lake County court granted the firm's motion to withdraw as Wereko's counsel. In accordance with the withdrawal order, the firm filed a fee petition against Wereko on September 7, 2016, seeking $10,752.59, *i.e.*, the difference between the attorney fees and costs incurred by Wereko ($58,362.59) and the amounts she previously paid ($47,610).[1]

¶ 6     Wereko retained another attorney, who had previously represented her in the divorce proceedings prior to the firm's involvement. Following an unsuccessful motion to continue the trial date – wherein Wereko represented that the firm had "held her file hostage" – the Lake County court granted Wereko's motion to voluntarily dismiss her dissolution petition on September 28, 2016. On the same date, the Lake County court granted Potenza's motion for voluntary dismissal of his counter-petition for dissolution of marriage. Potenza filed a divorce

---

[1] The record does not include any written ruling by the Lake County court on this petition or an amended petition filed by the firm in April 2017.

petition in the circuit court of Cook County two hours after the dismissal in Lake County.

¶ 7    Wereko filed a motion in the Lake County court to vacate the order granting Potenza's motion for voluntary dismissal or, alternatively, to vacate the order granting her own motion for voluntary dismissal.  She represented that she dismissed her case solely because she did not have the case file for the trial and that Potenza voluntarily dismissed his case to "forum shop" and to avoid paying retroactive child support and other expenses.  The motion to vacate was denied.

¶ 8    The firm subsequently filed the instant breach of contract action in the circuit court of Cook County in May 2017, seeking $19,897.06 plus attorney fees, interest, and court costs.

¶ 9    Wereko, represented by counsel, filed an answer, affirmative defenses, and counterclaims based on breach of contract and negligence.  In her breach of contract count, Wereko alleged that the parties' retainer agreement permitted the firm to withdraw only upon the occurrence of certain enumerated events, which included Wereko's failure to satisfy her payment obligations. Asserting that she fully complied with the agreement, Wereko alleged, in part, that the firm (a) billed her multiple times during the months of June and July of 2016, in violation of the procedures in the retainer agreement and (b) improperly charged her interest prior to the due date of the bills.  In the negligence count, Wereko alleged, in part, that the firm breached its duty of reasonable care by failing to timely return the case file and to cooperate with Wereko and her new counsel.  According to Wereko, the firm's conduct resulted in the dismissal of the Lake County case and caused her to incur delay and additional fees and costs due to the Cook County divorce case.

¶ 10   The firm responded that the retainer agreement included a non-exhaustive list of bases for withdrawal; the firm denied involvement with the voluntary dismissal of Wereko's Lake County case.  The firm also represented that (a) it generated additional invoices at Wereko's request and

(b) she was aware of an outstanding balance and made partial payments thereon in August 2016.

¶ 11    Two witnesses testified during the trial:  Tiffany Hughes (Hughes), the firm's founding partner, and Wereko.  Hughes described "a lot of work" in Wereko's case, including litigation regarding proceedings outside of the United States.  Hughes testified that Wereko requested that the firm generate invoices more frequently than the monthly billing provided in the retainer agreement because Wereko was "very, very involved in the invoices and seeing what work was done."  According to Hughes, Wereko eventually failed to comply with the requirement in the retainer agreement that she maintain a valid credit card on file or a $2,000 balance in her account at the firm.  Hughes testified that the firm withdrew based on Wereko's failure to fully pay the balances owed to the firm.  Hughes specifically referenced an email exchange with Wereko on August 10, 2016, wherein Wereko acknowledged that she owed amounts to the firm.  Hughes further maintained that Wereko's payments on August 8 and August 22, 2016, of $2,000 and $1,200, respectively, evidenced her knowledge of her outstanding obligation.

¶ 12    Hughes also testified that the decision to withdraw was partially based on Wereko's intention to continue certain litigation despite recommendations of the Lake County court to the contrary.  She claimed Wereko "was refusing to pretty much agree to anything that the Judge wanted or recommended that the parties do" and that she regularly made unreasonable demands.

¶ 13    As to the firm's alleged failure to timely turn over the case file, Hughes testified that "we don't really keep physical files" because "it's the 21st-century."  According to Hughes, Wereko kept extensive records – the majority of which Wereko provided to Hughes upon the firm's retention – and the firm provided copies of each filed document and court order to Wereko.

¶ 14    Wereko testified at trial that she never requested that the firm bill her more than once a month.  Based on the retainer agreement, she understood that monthly billings were due no later

than the 10th day of the next month. Prior to her receipt of an invoice on July 27, 2016, Wereko had paid all amounts due to the firm. Wereko testified that she had presented a payment plan to Hughes on August 10, 2016; she made no payments to the firm after August 22, 2016.

¶ 15    Wereko further testified that she had provided certain documents to Hughes when the firm was retained, and she acknowledged that she was emailed pleadings and orders by the firm during the representation. Wereko maintained, however, that she was not certain whether she received "the complete set" of documents and that the firm did not always promptly "share things." She testified that she dismissed her case because she did not have her file from the firm. Wereko also represented that the allocation judgment which had been entered in Lake County was relitigated in the Cook County divorce proceedings, resulting in additional attorney fees.

¶ 16    In its written closing argument, the firm asserted that Wereko's testimony that she made payments toward a balance that she claimed did not exist was "not credible." As to Wereko's counterclaims, the firm argued, in part, that the retainer agreement did not preclude the firm from billing her more frequently than the monthly billing process described in the agreement, and that Wereko had specifically requested frequent billing because she wanted to manage her personal finances and the litigation costs. The firm also contended that the evidence demonstrated that Wereko had her complete electronic file and that the firm complied with an order of the Lake County court regarding the provision of the files. The firm observed that the order denying Wereko's motion to continue the trial specifically noted that it was "denied over counsel's objection that he has no file." According to the firm, the Lake County court knew that (a) Wereko had her electronic file and (b) she had re-hired her previous counsel in the divorce proceedings, who already had experience with her case and the case file.

¶ 17    In her written closing argument, Wereko contended that the firm failed to establish that

the requested fees were reasonable and necessary, and that Hughes manipulated the billing to artificially create a default. She contended that the firm's noncompliance with the billing procedures, its improper withdrawal based on Wereko's purported payment obligations, and its failure to timely provide the case file resulted in a breach of their contract and a violation of the standard of care. As to damages, she claimed that the firm's actions caused her to lose the benefit of $114,000 she paid in legal fees in the Lake County case and caused her to incur legal fees in the Cook County case totaling $110,000.

¶ 18 In a written judgment entered on February 5, 2019, the circuit court found that (a) the parties entered into a valid and enforceable written contract for legal services at a reasonable hourly rate for Hughes of $325, (b) Wereko breached the contract by failing to comply with the contractual provisions in the retainer agreement which required her to maintain a valid credit card on file with the law firm, and (c) the firm was entitled to attorney fees, interest, and expenses for legal services rendered to Wereko through August 24, 2016. The circuit court further concluded, however, that the firm was not entitled to legal fees incurred in representing itself to collect its own fees. The circuit court dismissed Wereko's counterclaims for breach of contract and negligence with prejudice, finding that Wereko did not provide sufficient evidence to demonstrate that the firm breached the retainer agreement or breached its duty during its representation of Wereko when it filed a motion to withdraw as her attorney.

¶ 19 On February 21, 2019, the circuit court entered a judgment for the firm in the amount of $12,138.33, representing $9,939.85 in fees and $2,198.48 in interest, plus costs in the amount of $442.89. Wereko timely filed this *pro se* appeal.

¶ 20                                          ANALYSIS

¶ 21 Wereko raises numerous contentions on appeal in support of her position that the circuit

court erred in (a) entering judgment and awarding damages to the firm in its breach of contract action and (b) dismissing her counterclaims for breach of contract and negligence. Prior to considering her various arguments, however, we must briefly address two preliminary issues.

¶ 22                                     Preliminary Issues

¶ 23    First, the firm contends that because the February 21, 2019 order was marked as "final and appealable" – and the February 5, 2019 order (ruling on the complaint and counterclaims) was not so designated – our jurisdiction extends solely to the appeal of the February 21 order. We reject this contention. The February 5 order should not have been marked as "final" since the trial court had not yet determined the *amount* of the judgment, *i.e.*, it was a nonfinal order. Conversely, the February 21 order was correctly marked as "final" because, at that point, "the only thing remaining is to proceed with execution of the judgment." *Lamar Whiteco Outdoor Corp. v. City of West Chicago*, 395 Ill. App. 3d 501, 505 (2009). We further observe that Wereko referenced both the February 5 and February 21 orders in her amended notice of appeal. See Ill. S. Ct. R. 303(b) (eff. July 1, 2017) (providing that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from"). Even if she had failed to expressly reference the earlier order, our supreme court has long held that a judgment not specified in the notice of appeal is reviewable if it is a step in the procedural progression leading to the judgment specified in the notice of appeal. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 58. The February 5 order was a step in the procedural progression leading to the February 21 order. The firm's jurisdictional challenge is unavailing.

¶ 24    Second, we observe that certain documents included in the appendix to the firm's brief were not part of the record on appeal. We will disregard any documents in the appendix which were not included in the appellate record. *Oruta v. B.E.W. & Continental*, 2016 IL App (1st)

152735, ¶ 32; Ill. S. Ct. R. 342 (eff. July 1, 2017). We now turn to the merits.

¶ 25                    The Firm's Breach of Contract Action

¶ 26    Wereko appeals from trial court rulings following a bench trial. The standard of review in a bench trial is whether the judgment is against the manifest weight of the evidence. *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 12; *Kunkel v. P.K. Dependable Construction, LLC*, 387 Ill. App. 3d 1153, 1157 (2009). See also *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 598 (2000) (noting that the sole question on review was whether the trial court's judgment for attorney fees and costs was against the manifest weight of the evidence). A judgment is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence. *Kunkel*, 387 Ill. App. 3d at 1157; *Wildman*, 317 Ill App. 3d at 599. If the record contains any evidence to support the trial court's judgment, the judgment should be affirmed. *InsureOne Independent Insurance Agency, LLC v. Hallberg*, 2012 IL App (1st) 092385, ¶ 81.

¶ 27    The firm sued Wereko for breach of contract, claiming that she failed to fully pay for the legal services provided by the firm. In order to establish a breach of contract claim, a plaintiff must allege and prove the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and resultant injury to the plaintiff. *Burkhart v. Wolf Motors of Naperville, Inc.*, 2016 IL App (2d) 151053, ¶ 14. In an action for attorney fees based on a breach of contract theory, a plaintiff-attorney's *prima facie* case includes proof of: the existence of an attorney-client relationship; the nature of the services rendered; the amount of time expended; and the result, if any, obtained for the client. *Wildman*, 317 Ill. App. 3d at 598.

¶ 28    In the instant case, the parties do not dispute the existence of an attorney-client relationship or a valid and enforceable contract, *i.e.*, the retainer agreement. Wereko instead

contends, in part, that the firm did not "fully perform" under the contract and that she did not breach the contract. For the reasons discussed below, neither contention is persuasive.

¶ 29    While Wereko takes issue with the firm's performance under the contract, we observe that her concerns are not rooted in the quality of the legal services performed by the firm. Rather, she argues that the firm (a) improperly withdrew, (b) did not comply with the billing and payment terms set forth in the retainer agreement, and (c) failed to timely turn over the case file.

¶ 30    As to the firm's withdrawal, Wereko asserts that the retainer agreement set forth six bases for withdrawal, none of which was satisfied herein. We initially note that the retainer agreement did not expressly provide that the enumerated bases were the exclusive bases for withdrawal under the contract. In any event, two of the enumerated bases appear applicable.

¶ 31    First, the retainer agreement provided for withdrawal if Wereko insisted that the attorneys engage in conduct that is contrary to the attorneys' judgment and advice, even if such conduct was not specifically prohibited under the disciplinary rules. Hughes testified that the firm's withdrawal was related, in part, on Wereko's noncompliance with certain of the firm's advice which was based on the recommendations expressed by the Lake County court. While we agree with Wereko that "[n]othing in the contract precludes the client from expressing disagreement with a course of action proposed by the attorneys," we also find that nothing in the contract precluded the firm from withdrawing under the circumstances as described by Hughes. Although Wereko suggests that the firm did not "prove the alleged disagreement," the trial judge was in the best position to judge the credibility of the witnesses and to determine the weight to be given to their testimony. See *Kunkel*, 387 Ill. App. 3d at 1158. Even if the trial court did not expressly rely upon this ground in reaching its judgment, we may affirm the judgment upon any ground warranted by the record. *Wildman*, 317 Ill. App. 3d at 599-600.

¶ 32    Second, the retainer agreement provided for the firm's withdrawal if Wereko disregarded her payment obligations.  As discussed further below, the evidence indicated that she did not fully comply with her payment obligations under the parties' agreement, *e.g.*, she did not maintain a valid credit card on file or a $2,000 retainer balance, as provided in the agreement. Wereko argues, in part, that the firm generated invoices more frequently than provided in their agreement, which triggered her alleged payment obligations and improperly served as a basis for the firm's withdrawal.  We observe, however, that the parties provided contradictory testimony regarding whether Wereko requested more frequent billing than provided in the retainer agreement.  Wereko argues on appeal that Hughes was "not able to prove [Wereko] made such requests, nor did [Wereko] testify that she requested multiple [*ad hoc*] billings outside the contract terms."  When contradictory testimony that could support conflicting conclusions is given at a bench trial, however, an appellate court will not disturb the trial court's factual findings based on that testimony unless a contradictory finding is clearly apparent.  *Kunkel*, 387 Ill. App. 3d at 1158.  Accord *Kroot v. Chan*, 2017 IL App (1st) 162315, ¶ 19.  We further note that in her email communications with the firm, Wereko did not question the frequency of the invoices, but instead communicated her inability to fully pay the billed amounts.

¶ 33    We thus reject Wereko's contention that the firm's noncompliance with the billing terms in the retainer agreement or its improper withdrawal was indicative of its failure to fully perform under the contract.  The withdrawal was consistent with the terms of the parties' agreement and appears compliant with our supreme court rules.  See Ill. S. Ct. R. 13(c) (eff. July 1, 2017).  The Lake County court's approval of the firm's withdrawal suggests the court's recognition that withdrawal would not delay the case or otherwise be inequitable.  *Id.*

¶ 34    Wereko also contends that the firm did not fully comply with the contract by failing to

timely provide the case file. Once again, Wereko and Hughes offered contradictory testimony. See *Wildman*, 317 Ill. App. 3d at 599 (noting that the appellate court must defer to the trial court's findings because, as the finder of fact, the trial court was in a superior position to observe the witnesses' demeanor, to judge their credibility, and to determine the weight their testimony and other evidence should receive). Hughes testified that she provided electronic copies of all filings and orders to Wereko throughout the firm's representation. The trial testimony regarding the involvement of multiple attorneys on behalf of Wereko in the Lake County proceedings – and the firm's relatively short tenure in the case – also suggested that the firm was not the primary "keeper" of the documents. Although Wereko maintained that the firm failed to timely provide the file, she acknowledged that there was no petition for rule to show cause regarding the firm's alleged noncompliance with a turnover order entered by the Lake County court. Where the determination of the case largely depends upon the facts found in the record, the findings and judgment of the trial court will not be disturbed by the reviewing court if there is any evidence in the record to support such findings. *Wildman*, 317 Ill. App. 3d at 599. Based on the foregoing, we reject Wereko's contention that the firm's alleged failure to timely provide the case file constituted a failure to perform for purposes of the firm's breach of contract action.

¶ 35    As noted above, the elements of a breach of contract action include performance by the plaintiff and a breach by the defendant. *Burkhart*, 2016 IL App (2d) 151053, ¶ 14. The trial court found that defendant Wereko breached the parties' contract by not complying with the provisions in the retainer agreement which required her to maintain a valid credit card on file with the law firm. The agreement provided, in part: "The firm requires that a valid credit card remain on file with the firm to secure payment to the firm. In the event that you do not have a credit card, or do not wish to secure your bill with the firm through a credit card, then you must

keep a positive retainer balance of $2,000.00 with the firm at all times." The record includes a signed credit card agreement in which Wereko provided her credit card information to the firm. She maintains that there was no evidence that the credit card on file was found to be invalid during the contract term or that the use of "additional payment vehicles" (*e.g.*, checks) invalidated the card. Hughes testified, however, that Wereko instructed the firm in June 2016 *not* to use the credit card.

¶ 36     In order to warrant reversal, an appellant must present evidence that is so strong and convincing as to completely overcome the evidence and presumptions, if any, existing in the appellee's favor. *Wildman*, 317 Ill. App. 3d at 599. Based on the record, we cannot find that the trial court erred in its determination that Wereko did not comply with the credit card requirement. Furthermore, while Wereko maintains that her "substantial efforts to maintain a positive retainer balance" precluded the firm's withdrawal, the contract did not so provide. We also observe that, in an August 10, 2016 email to Hughes – after Hughes had forwarded the firm's draft motion to withdraw – Wereko offered to remit at least $1,000 per paycheck to the firm. Although Wereko informed Hughes that she did not have "limitless funds" and that the funds she previously had were "exhausted with you and other attorneys," Wereko did not deny or otherwise challenge her payment obligation.

¶ 37     Invoking the doctrine of anticipatory repudiation, Wereko also argues on appeal that "[a]s the law firm breached the contract by refusing to do work and then withdrawing, [Wereko] had no further obligation to pay more fees it deemed due and owing." Anticipatory repudiation of a contract arises through a manifestation by one party of an intent not to perform its contractual duty when the time comes for it to do so even if the other party has rendered complete and full performance. *In re County Treasurer and Ex Officio County Collector of Kane County*, 2018 IL

App (2d) 170418, ¶ 39. The failure of the breaching party must be a total one which defeats or renders the object of the contract unattainable. *In re Marriage of Olsen*, 124 Ill. 2d 19, 24 (1988). Simply put, the doctrine is inapplicable because, among other things, the firm performed its contractual duty by providing legal services to Wereko. In any event, Wereko forfeited her anticipatory repudiation argument by failing to present it to the trial court. *Cholipski v. Bovis Lend Lease*, 2014 IL App (1st) 132842, ¶ 58 (providing that issues not raised in the trial court are waived and may not be raised for the first time on appeal).

¶ 38    Wereko further contends that the firm's breach of contract claim could have been addressed through its fee petition in the Lake County proceedings (see 750 ILCS 5/508(c) (West 2016)) and thus should be dismissed under the doctrine of *res judicata*, which prohibits a party from seeking relief on the basis of issues that could have been resolved in a previous action. *Law Offices of Nye & Associates, Ltd. v. Boado*, 2012 IL App (2d) 110804, ¶ 14. As Wereko failed to present her *res judicata* argument to the trial court, however, she has forfeited the argument. *Cholipski*, 2014 IL App (1st) 132842, ¶ 58. See also *Jeanblanc v. Sweet*, 260 Ill. App. 3d 249, 254 (1994) (noting that issues and arguments raised for the first time on appeal, even from an order we review *de novo*, are deemed forfeited); *Burgdorff v. International Business Machines Corp.*, 74 Ill. App. 3d 158, 162 (1979) (finding that the plaintiff waived his *res judicata* argument by failing to present it at trial or in his post-trial motion).

¶ 39    Finally, Wereko contends that the firm did not prove that the fees sought from Wereko were "fair, just and reasonable." A plaintiff-attorney alleging breach of contract by a client must furnish sufficient facts and computations to establish by a preponderance of the evidence that the services rendered were necessary and that the amount of fees sought is fair and reasonable. *Wildman*, 317 Ill. App. 3d at 598. In a civil trial, the necessity of the legal services performed

and the reasonableness of the amount charged are questions of fact. *Id.* at 599. The trial judge, sitting as the trier of fact, decides these issues based on the weight of the competent evidence. *Id.* The evidence sufficient to support a civil judgment for attorney fees may be solely comprised of witness testimony. *Id.*

¶ 40 Wereko contends that the firm provided "no proof" regarding the fairness or reasonableness of its fees. The record, however, does not support her contention. Although Wereko argues that there was no evidence as to why the firm's hourly rates were reasonable, the parties already agreed on the value of the services as part of the retainer agreement. See *Wildman*, 317 Ill. App. 3d at 601. Wereko also asserts that there was "virtually no evidence as to the substance of the work involved in the case." We note, however, that Hughes testified regarding the nature of the work performed by the firm. Furthermore, while the firm's invoices are not included in the record on appeal, the record indicates that "time records" were submitted to the trial court for review and Wereko's written closing statement referenced various invoices included in the firm's exhibits. We also observe that the trial court directed the parties to "bring proof of calculations" to a hearing on February 21, 2019, for a modified judgment. The order entered on February 21, 2019 – in which the court set the amount of the judgment – reflected that both parties' attorneys were present at the hearing. Since Wereko did not provide a transcript or other report of the proceedings on that date (see Ill. S. Ct. R. 323 (eff, July 1, 2017)), however, we do not know what evidence or argument was presented regarding the fee calculations. As the appellant, Wereko has the burden to present a sufficiently complete record of the proceedings to support her claim of error, and in the absence of such a record, we will presume that the order entered by the trial court regarding the calculation of fees was in conformity with the law and had a sufficient factual basis. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 41    For the foregoing reasons, we conclude that the trial court's judgment in favor of the firm on its breach of contract complaint and its award of damages were not against the manifest weight of the evidence.[2]  We now turn to Wereko's counterclaims.

¶ 42                              Wereko's Counterclaims

¶ 43    Wereko argues that she proved her counterclaims for breach of contract and professional negligence.  As noted herein, the elements of a breach of contract action include the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and resultant injury or damages to the plaintiff.  *Razor Capital v. Antaal*, 2012 IL App (2d) 110904, ¶ 30.  For the reasons discussed above, we find that the trial court's conclusion that Wereko failed to prove that the firm breached their contract was not against the manifest weight of the evidence.  Simply put, the evidence does not demonstrate that the firm breached the contract by improperly withdrawing or by failing to timely provide the case file.

¶ 44    Wereko's second counterclaim is similarly deficient.  The elements of a legal malpractice claim are: (1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause; and (4) damages.  *Lopez v. Clifford Law Offices, P.C.*, 362 Ill. App. 3d 969, 974-75 (2005).  As an initial matter, Wereko's failed to present expert testimony regarding the standard of care, which is usually fatal to a plaintiff's malpractice action.  *Barth v. Regan*, 139 Ill. 2d 399, 407 (1990).  Even if we assume that expert testimony was not required because the common knowledge or experience of lay persons is sufficiently extensive to infer negligence from the

---

[2] Wereko also contends that the trial court erred in not "dismissing the law firm's claim outright" after Wereko moved for a directed finding during the trial.  We find that the denial of her motion for a directed finding was proper because the law firm "established a *prima facie* case and the evidence was also sufficient to meet the burden of proof of preponderance of the evidence on all the elements necessary for a breach of contract action."  *Law Offices of Colleen M. McLaughlin v. First Star Financial Corp.*, 2011 IL App (1st) 101849, ¶ 41.

facts or because the firm's negligence is grossly apparent (see *id.*), Wereko nevertheless failed to present sufficient evidence as to the proximate cause element.

¶ 45   A plaintiff in a legal malpractice action may recover as actual damages the attorney fees proximately caused by the defendant law firm's malpractice so long as the plaintiff can demonstrate that she would not have incurred the fees in the absence of the defendant's negligence. *Huang v. Brenson*, 2014 IL App (1st) 123231, ¶ 25.  Proximate cause requires, in part, a showing of legal cause, *i.e.,* a finding that a reasonable person in the defendant's position could foresee the plaintiff's injury as a likely result of the defendant's conduct. *Id.* ¶ 27.

¶ 46   Wereko contends that the firm's withdrawal and failure to timely provide the case file effectively negated the work performed by her attorneys in the Lake County proceedings and resulted in duplicative work – and substantial fees – in the Cook County proceedings.  As discussed above, however, the Lake County court approved the firm's withdrawal.  Furthermore, the order denying Wereko's motion to continue the trial provided that the denial was "over counsel's objection that he has no file."  The Lake County court, which was familiar with the litigants and the procedural posture of the case, apparently did not consider the firm's actions vis-à-vis the case file to be an adequate basis for delaying the scheduled trial.  Even assuming the firm's conduct was negligent, we find that it would be unreasonable to expect the firm to foresee that its conduct would result in damages as suggested by Wereko.  At its core, the expenditure of additional fees in the Cook County divorce proceedings was based on Potenza's decision to voluntarily dismiss his counter-petition and to file in Cook County within hours of Wereko's voluntary dismissal.  We could not expect her former law firm, which had withdrawn the previous month pursuant to a court order, to foresee Potenza's actions and the events that allegedly followed.

¶ 47    Based on the foregoing, we conclude that the trial court's findings that Wereko failed to prove her counterclaims for breach of contract and professional negligence were not against the manifest weight of the evidence.  We thus need not consider her request for punitive damages.  See also 735 ILCS 5/2-1115 (West 2018) (providing that "[i]n all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal *** malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed").

¶ 48                                           Sanctions

¶ 49    In her reply brief, Wereko suggests that the firm's conduct is sanctionable under Rule 137 of the Illinois Supreme Court Rules.  Ill. S. Ct. R. 137 (eff. Jan. 1, 2018).  We initially observe that Wereko raises the issue of sanctions for the first time in her reply brief, in violation of Rule 341(h)(7) (eff. May 25, 2018) (noting that points not argued are forfeited and "shall not be raised in the reply brief").  We further note that Rule 375 – not Rule 137 – is the appropriate basis for sanctions in the appellate court for improper conduct on appeal.  Ill. S. Ct. R. 375 (eff. Feb. 1, 1994).  See also *Sacramento Crushing Corp. v. Correct/All Sewer, Inc.*, 318 Ill. App. 3d 571, 580 (2000).  Even if we treated her reference to Rule 137 as a request for sanctions under Rule 375, we would nevertheless deny such request for the reasons stated above.

¶ 50                                         CONCLUSION

¶ 51    The judgment of the circuit court of Cook County is affirmed in its entirety.

¶ 52    Affirmed.